## Naugle's Estate (No. 1).

*Care of testator—Services rendered—Compensation — Proof — Sufficiency.*

A claimant for compensation for services rendered a decedent under a written agreement which provided that he should receive such compensation at a specified rate "while I (the testatrix) need care" is entitled to the payment for the services actually rendered.

Where the auditor found, on sufficient evidence, that the claimant had rendered such services for a certain number of days, the latter will be entitled to compensation at the rate fixed by the testatrix.

*Evidence—Witnesses—Competency—Act of May 23, 1887, P. L. 159, section 4.*

The right to commission as an executor does not disqualify a witness under the provisions of section 4 of May 23, 1887, P. L. 159.

Argued October 23, 1923.    Appeal, No. 80, April T., 1924, by John C. Naugle, from decree of O. C. Lawrence County, Sept. T., 1918, No. 38, making distribution of

Exceptions to auditor's report. Before EMERY, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions.

John C. Naugle and Marjorie Gillespie, legatees, appealed.

*Errors assigned* were dismissal of exceptions, quoting them.

*Charles R. Davis,* for appellant.—Under the evidence the claimant was not entitled to compensation: Naugle's Est., 268 Pa. 481; Miller's Est., 136 Pa. 239.

*S. L. McCracken,* for appellee.

OPINION BY PORTER, J., February 29, 1924:

This is an appeal from a decree of distribution. The court below sustained a claim of George W. Naugle, now deceased, for looking after and taking care of the testatrix, for 2,666 days at the rate of $1.50 per day, amounting to $3,999, and awarded that amount to the legal representative of the said George W. Naugle. The appeal is by a son of the testatrix, a legatee under her will.

After a former distribution by the court below of the funds in the hands of the executors, an appeal was taken to the Supreme Court, the result of which is reported in Naugle's Estate, 268 Pa. 481. The opinion by Mr. Justice SIMPSON in that case quotes the language of the written agreement upon which the claim of George W. Naugle was founded, and clearly defines the rights thereunder arising. This renders unnecessary a detailed repetition of the facts. The decision of the Supreme

Court in that case must be accepted as having determined that if George W. Naugle actually performed services, looked after the testatrix and took care of her while she needed care, in accordance with the provisions of the written agreement of testatrix, he was entitled to be compensated as by the instrument provided. The deceased had directed, by the instrument: "I want my son George to look after me while I need care & i want him to be paid at rate of one dollar and a half a day out of my estate." There had not, upon the former distribution, been a distinct finding that the testatrix had needed care, nor as to the number of days that the claimant and his family had performed such service, and the decree of the court distributing to the claim was for that reason reversed. The opinion of Mr. Justice SIMPSON contains the following paragraph, clearly indicating the question involved: "The vital question therefore is: During how many days did testatrix 'need care' and actually receive it from appellee or his family? There is no finding upon this point, though the question was directly raised by appellants' exceptions. As already pointed out, there was evidence she generally did not need or receive care, and during her absence he did nothing for her. It is necessary, therefore, to reverse the decree and send the case back that further evidence upon this point may be taken, if desired, a distinct finding had, and a decree made in accordance therewith."

When the record was returned to the court below the case was again referred to the auditor, and testimony was taken as to the physical condition of the testatrix, her ability to care for herself, the manner in which she had been cared for by the claimant and his wife, during the years intervening between the signing of the agreement and her death, and the periods of her absence from the home of the claimant during those years. The auditor, after a full hearing, found the following facts: "Fourth: That Isaphena P. Naugle did need care, she being an aged woman, and because of her age it was

unsafe for her to live alone and care for herself, and that
from the time she made the contract with her son George
W. Naugle on February 11, 1908, continuously until
the time of her death on January 11, 1916.   That she
lived with the said George W. Naugle and Edith his
wife, and they looked after her and rendered her such
care and attention as she needed and required." "Fifth:
That the said George W. Naugle lived in the same house
with said Isaphena P. Naugle, and that his wife did all
the housework and assisted in looking after and caring
for the said Isaphena P. Naugle." "Sixth: That the said
Isaphena P. Naugle did receive from the said George W.
Naugle, or his wife, such care as she needed from the
time of the date of the contract, to wit, February 11,
1908, up to the date of her death, to wit, on January 11,
1916, (with the exception of the times when she was
absent from her home), for a period of 2,890 days, less
the  time which was spent visiting relatives, which
amounts to 224 days, or 2,666 days."   We have here
specific findings of fact as to how many days the testatrix
needed care and actually received it from George and his
wife; the absence of which was the only ground upon
which the Supreme Court reversed the former distribu-
tion to this claim.   Was there sufficient evidence to sup-
port these findings?   We are of opinion there was.   It
was undisputed that the testatrix was 86 years of age
at the time of her death.   Witnesses testified that from
the time of the execution of the agreement she was frail,
had not much strength, had a tumor on her arm, which
caused pain, that she had varicose veins in both legs
which prevented her standing more than a short time,
that her heart was weak and troubled her at times, that
she would take spells and fall, that during all the time
subsequent to the execution of the written agreement she
was unable to care for herself and that George and his
wife never left her alone, that the wife was most always
at home and that if George and his wife would go away
together for an evening they would always get some one

to come and stay with her while they were away. The evidence clearly established that she was not absent from the residence of George and his wife more than two weeks in each year, when she visited other relatives. The evidence, it is true, indicated that her mind was clear, and that she was aware of her physical weakness. She frequently spoke to her friends in commendation of the manner in which George and his wife cared for her. There can be no question under the evidence that George and his wife were constant in their care for his mother, never leaving her alone. The mother, the testatrix, was from her 78 to her 86 year, in frail health, had a weak heart which troubled her at times, was subject to seizures which caused her to fall, and we are not convinced that the auditor and the court below erred in finding that she needed the care which George and his wife bestowed.

Clyde V. Ailey, one of the executors of the will of Isaphena P. Naugle, became, after the account in the present case was filed, the executor of George W. Naugle, who subsequently died. He was called as a witness in the present proceeding, and the appellants objected to his competency. He was not called to relieve himself from any liability, but merely in support of the claim of George W. Naugle, the executor of whose will he was, to compensation out of the fund for distribution. It did not appear that Ailey had any personal interest in the matter in controversy. The only possible interest he could have would be in the right to commissions upon any amount received when he came to settle the estate of George W. Naugle. "No liability merely for costs nor the right to compensation possessed by an executor, administrator or other trustee, nor an interest merely in the question on trial, nor any other interest, or policy of law, except as is provided in section five of this act, shall make any person incompetent as a witness": Act of May 23, 1887, section 4, P. L. 159. The witness was not within the exceptions designated by the fifth section of the statute. It is only the individual, personal, adverse

Opinion of the Court.    [83 Pa. Superior Ct.

interest which works disqualification: Bates v. Carter Construction Co., 255 Pa. 205. Ailey would not have been competent to testify that he was not personally liable, as executor, for the fund for distribution in the present case upon the ground that he had handed over the entire fund to his coexecutor, George W. Naugle, deceased, but that is not the question here presented: Heydrick's App., 109 Pa. 610. The account of the executors in the present case had been confirmed absolutely and no attempt had been made to set aside that confirmation.

The decree is affirmed and the appeal dismissed at cost of the appellant.