# McClelland's Executor *versus* West's Administrator, to use, &c.

1. A suit was by West, administrator, to use, &c.; a son of West had no interest in the claim to destroy his competency as a witness for plaintiff.

2. Under Act of April 1st 1869, all witnesses are primâ facie competent as regards interest and policy.

3. Since the Act of 1869, the court should discountenance all objections to witnesses on the score of interest and policy, unless made clearly to appear.

4. The settlement of an account and striking a balance is a clear admission of a precise indebtedness, in answer to the Statute of Limitations.

[McClelland's Executor *v.* West's Administrator.]

5. The balance of a settled account in which interest is included, carries interest on the whole from the settlement.

6. The balance of a stated account is principal; it cannot be re-examined to ascertain the items or their character.

7. Johns *v.* Lantz, 13 P. F. Smith 324, approved; McClelland *v.* West, 9 P. F. Smith 487, Weaver *v.* Weaver, 4 P. F. Smith 152, distinguished.

November 13th 1871. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Fayette county* : No. 37, to October and November Term 1871.

This was an action of assumpsit brought May 26th 1870, by Samuel Cooper, administrator of Jonathan R. West, deceased, "for the 'use of Jacob D. West and George L. West, now for the use of Jacob D. West and Daniel F. Cooper" against the executor, &c., of Joseph McClelland, deceased.

The case was tried December 6th 1870, before Gilmore, P. J. The claim was on a book account commencing September 1837, and ending in 1849.

The plaintiff offered as a witness Enos West, a son of Jonathan R. West, the intestate; he was objected to by the defendant and he thereupon executed a release to George L. West of all his interest in the estate of Jonathan R. West, deceased. The court admitted the witness and sealed a bill of exceptions.

The witness was shown an account and testified : .'' I made this account out for my father against McClelland in 1859–60; made partly out of books and partly from bills; when I made it out I gave it to my father, who started to see McClelland to settle; I saw no more of this bill until 1864, when my father being sick I came to town to see him; he requested me to go and settle with McClelland for him; I went and saw McClelland; told him my father wished me to settle with him, if he had no objections; he told me that there was a part of that bill he would neither settle nor pay; hadn't the bill with me; I asked him ' what part ?' he told me ' the part that had John Sangston's name on it;' I told him ' that I thought the bill generally had his (McClelland's) name on them;' he said he ' would settle and pay all that had his name on,' but said ' he hadn't time to settle with me then;' that I would have to come down again. Some two weeks afterward I came down; found him on the street; asked him, if he had time to settle now; he said he had; we went to his house; he pulled out a small stand drawer; took out a bunch of papers; this bill was among them. He then examined this bill over; he had two bills marked with a cross; they had John Sangston's name on, and he said he would not pay them. He went over the balance of the bill and he said, it was all right, after I had made some explanations in regard to some of the items. He then produced his books; he went all over his books; didn't appear very well satisfied at first with them; said ' something was wrong.' We went all over them

from the beginning, and I made his account some $20 better than he had it on his book; he handed me a pen and ordered me to change the figures on his ledger. He then put it down on this bill, under the aggregate of this account. Just before that, I told him that the saw-mill bill was not charged in my father's account; he asked me what the old man charged for building the saw-mill? I said $150. He said it was a pretty large bill. I told him father said he would send out and measure it and it would come to $175. He said 'rather than to go to that trouble to put it down at $150.' We then took the amount off of his ledger and put it under this bill; struck the balance; the balance was $228.54. I then claimed interest on that sum from the date of the last charge; he said I was only entitled after six months; we both calculated the interest for fourteen years, it amounted to $191.94; adding the principal and interest together, making $428. He said 'it was a pretty big bill, and that he would go over the next day and see the old man himself; that he thought he would throw off a part for the sake of getting his money.' When I first saw him it was the latter part of May, and it was pretty well along in June 1864, when we made the settlement. Afterwards I had a small bill on him; I was drafted and had to make up my commutation-money. I called on McClelland for my bill; he told me to borrow the money; that 'it would take about all he could raise at present to pay the old man's bill off.'' My father died September 6th 1864. In a conversation before we undertook to settle, and after I had got in the room, he said the statute of limitation or the limitations had never paid a debt for him, but paid him a good many. I notified the executor of McClelland about six months after McClelland's death, that the boys had a claim against McClelland; did not state the amount.''

Joseph McClelland died in January 1866.

The account was then given in evidence.

It showed the balance . . . . $228.54
    Interest 14 years . . . . . 191.94

                                        420.48

The defendant gave no evidence.

The defendant requested the court to charge the jury:—

That what was said by McClelland to Enos West at the time of balancing the accounts, to wit, "It is a pretty big bill, and I will go over to-morrow and see the old man myself; I think he will throw off a part for the sake of getting his money," is not equivalent to a promise by McClelland to pay the balance struck in favor of West, and that as it was not equivalent to such a promise, it did not take the claim out of the Statute of Limitations, and the plaintiff cannot recover.

The court answered: "If there was a settlement, and the bal-

[McClelland's Executor *v.* West's Administrator.]

ance ascertained, the expression afterwards by the defendant's intestate, that 'it is a pretty big bill, and that he would go over and see the old man himself,' would not be sufficient to destroy the acknowledgment of the debt, and entitle the plaintiff to recover, against the plea of the statute. The expression was nothing more than a surprise at the amount, and a declaration to appeal to the generosity of the creditor."

The court also charged the jury that plaintiff was entitled to recover interest on the settled account, from the date of the settlement, and this although the balance included interest on the account up to the settlement.

The verdict was for the plaintiff for $584.40.

The defendants took a writ of error. They assigned for error:—

1. Admitting Enos West to testify.

2. The answer to the defendant's point.

3. The charge as to interest.

*C. Boyle* and *D. Kaine*, for plaintiff in error.—As to 1st error cited: Post *v.* Avery, 5 W. & S. 509; Haus *v.* Palmer, 9 Harris 296; Purdy *v.* Dedrich, 2 Philad. R. 278; Graves *v.* Griffin, 7 Id. 178; Wilkinson *v.* Turnpike Co., 6 Barr 398; Karns *v.* Tanner, 16 P. F. Smith 297.

As to 2d error: McClelland *v.* West, 9 P. F. Smith 487; Webster *v.* Newbold, 5 Wright 592; Harbold *v.* Kuntz, 4 Harris 210; Farley *v.* Kustenbader, 3 Barr 418.

*D. Downer*, for defendant in error.—As to 1st error, cited Bennett *v.* Hethington, 16 S. & R. 193; Ott *v.* Houghton, 6 Casey 451. As to 2d error: Huff *v.* Richardson, 7 Harris 388.

The opinion of the court was delivered, May 13th 1872, by

Agnew, J.—The objection to the competency of Enos West as a witness cannot be sustained. He was not a party to the record and had no interest in the subject of the controversy, nor was he a party to the contract or account out of which the debt in suit arose, and no assignment from him was necessary to enable the plaintiffs to maintain their action. Whatever interest he had was a resulting interest in the final settlement of the estate of Jonathan R. West. But as the action was brought, he had no interest in that particular claim, for the action was not brought for the benefit of the estate, but for the use of Jacob D. West, and George L. West, whose interest passed to D. N. Cooper. They were the parties conducting the suit. The release of Enos West was to George L. West, in whom the title of the estate of Jonathan R. West had apparently vested before, either by the act of the decedent or that of his representative. In this state of the record the release was primâ facie a release, and not an assignment.

[McClelland's Executor *v.* West's Administrator.]

Now, in the bill of exceptions, it does not appear that the right of Jacob D. and George L. West, to bring the suit, was denied or that proof of their title was demanded as preliminary to the objection to the competency of the witness. Since the Act of 1869, enacting that neither interest nor policy of law shall exclude a witness, the ground of Post *v.* Avery is removed by legislation. Now the policy at the bottom of that case and its sequents is reversed, and primâ facie all witnesses are competent so far as interest and policy are in the question. It therefore lay upon the defendant to show a ground of incompetency still remaining to exclude the witness. As the record stood then without objection, there was nothing to show that the estate of Jonathan R. West, or that Enos West had any interest in the controversy before the court. Since the act of 1869, the court, in order to act in good faith toward the legislative branch of the government, must discountenance all objections on the score of interest and policy unless they be made clearly to appear.

The question upon the Statute of Limitations is without difficulty. This was not the case of a party promising to settle an account, or using any such ambiguous terms, and therefore it does not fall within Weaver *v.* Weaver, 4 P. F. Smith 152: McClelland's Executor *v.* West, 9 P. F. Smith 487, and that class of cases. On the contrary, it was the case of an actual settlement of the amount, stating it and striking a balance and a computation of interest by both parties on the balance. There was but one witness and no contradiction of his testimony, and the paper itself on which the settlement was made, balance struck and interest added, was produced and identified. There could not be a plainer admission of a precise debt and certain amount, accompanied as it was also, by an express waiver of the Statute of Limitations before the parties took off the accounts of both sides. Indeed, it is a stronger case than Johns *v.* Lantz, 13 P. F. Smith 324, and well deserves the remarks made by our Brother Sharswood in that case. The answer of the court to the defendants' point was therefore not erroneous.

Where an account is settled and a balance struck, the balance clearly bears interest, notwithstanding interest had been added into the account. The balance of the account being stated by themselves, becomes a new principal, and we do not go behind it, to ascertain the items, or their character, which entered into the account.

Judgment affirmed.