# Bates *v.* Carter Construction Company, Appellant.

*Witnesses—Competency — Action. against corporation — Statements of stockholder—Death of stockholder—Plaintiff as witness—Act of May 23, 1887, P. L. 158.*

1. Since the passage of the Act of May 23, 1887, P. L. 158, the court must discountenance all objections to the competency of a witness on the ground of interest and policy unless they be made clearly to appear.

2. In an action against a corporation the plaintiff is not rendered incompetent to testify as to certain relevant conversations between himself and a former officer and stockholder of the defendant company who died before the trial.  It is the individual, personal, adverse interest which works a disqualification.

*Contracts—Recision—Evidence—Set-off—Assignment—Time of performance unstated — Prematurity of action — Change of place of performance—Increased cost—Measure of damages—Loss of profits—Case for jury.*

3. In an action by a subcontractor against a general contractor to recover a balance due for work performed and for profits, which plaintiff alleged he would have made, had he been permitted to complete his contract, it appeared that after plaintiff had performed a part of the work defendant had rescinded the contract. Defendant offered evidence that it had paid directly to a subcontractor of plaintiff, part of an amount due by plaintiff to said subcontractor and sought to set off such payment against plaintiff's claim.  Plaintiff alleged that under his contract with such subcontractor such payment was not due the subcontractor until after plaintiff had been paid by defendant, and consequently the payment by defendant was unauthorized.  It appeared that the subcontractor

had attached payments due plaintiff in the hands of defendant and that defendant, upon paying the subcontractor, had taken an assignment of his claim against plaintiff. *Held,* that the evidence was admissible.

4. Where in such case it appeared that plaintiff had made a partial assignment of his claim to the use of a bank and that the action was marked to the use of the bank and plaintiff, it was not error to admit in evidence the assignment of the plaintiff's claim to the bank, or to refuse a point to the effect that as the assignment was only a partial one there could be no recovery by the assignee, in view of the fact that the cause of action had not been split, that only one action had been brought, and that for the entire amount of the claim.

5. In such case the court erred in refusing defendant's offer of evidence as to what it actually cost to complete the plaintiff's contract and that the work was done in a careful manner, and as economically and cheaply as possible, for the purpose of showing that plaintiff could not have completed the contract at the prices claimed by him, except at a loss; and it was immaterial that plaintiff had sublet part of such work where there was no evidence that plaintiff had sublet the entire work which was yet to be done, or of the financial ability of the subcontractor to complete the work for the prices named.

6. For the breach of a contract damages may be recovered for loss of profits, the direct and immediate fruits of the contract itself, and ascertainable with reasonable certainty, when they are the result of such breach, or which under the circumstances the parties may have contemplated at the execution of the contract as the probable result of its breach; but damages for the loss of profits for the violation of a contract may not be recovered when they are uncertain, remote or speculative, or when they grow out of a subsequent collateral or subordinate undertaking which was entered into on the faith of the principal contract.

7. In such case where the suit was on an oral contract which did not fix any time limit for performance, and which defendant had rescinded after part performance by the plaintiff, the court did not err in refusing to charge that the plaintiff was not entitled to recover because the contract was entire and no action could be maintained upon it until the time for its expiration had arrived.

8. In such case where part of plaintiff's claim was for extra hauling alleged to have been necessitated by a change in the location of the line of railroad upon which the work was done, the court properly submitted to the jury the question whether the change increased the expense of the work for the plaintiff, where the evidence on that point was conflicting.

Argued May 9, 1916.   Appeal, No. 138, Jan. T., 1916, by defendant, from judgment of C. P. Fayette Co., June T., 1911, No. 108, on verdict for plaintiff in case of William M. Bates, now for the use of First National Bank of Connellsville, and William M. Bates v. Carter Construction Company, a corporation.   Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Assumpsit on an oral contract.   Before VAN SWEAR-INGEN, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $27,749.91 and judgment thereon.   Defendant appealed.

*Errors assigned,* among others, were the various rulings on evidence referred to in the opinion of the Supreme Court, the charge to the jury and the refusal to direct a verdict for the defendant.

*D. W. McDonald,* with him *James R. Cray,* for appellant.—It was error to permit plaintiff to testify as to conversations with a deceased officer and stockholder of the corporation: Act of May 23, 1887, P. L. 158; Dickson v. McCraw, 151 Pa. 98; Irwin v. Nolde, 164 Pa. 205; Pattison v. Cobb, 26 Pa. Superior Ct. 72; Gunster v. Jessup, 196 Pa. 548; Horne v. Petty, 192 Pa. 32; First National Bk. of Bloomsburg v. Gerli, 225 Pa. 256.

The assignment from the legal plaintiff to the useplaintiff was improperly admitted, no copy thereof being attached to plaintiff's statement: Act of May 25, 1887, P. L. 271, Sec. 3; McGonnigle v. McGonnigle, 5 Pa. Superior Ct. 168; Stockley v. McClurg, 14 Pa. Superior Ct. 629; White v. Sperling, 24 Pa. Superior Ct. 120; Acme Manfg. Co. v. Reed, 181 Pa. 382; and for the further reason that the assignment was but partial: Appeals of the City of Philadelphia et al., 86 Pa. 179; Botsford v. Lull, 30 Pa. Superior Ct. 392.

The action was premature: Zuck & Henry v. McClure & Co., 98 Pa. 541.

The question as to whether plaintiff was entitled to recover an additional amount by reason of the change of place of performance of the contract should not have been submitted to the jury: Bornscheuer v. Consolidated Traction Co., 198 Pa. 332.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* for appellee.—Plaintiff was a competent witness: Act of May 23, 1887, P. L. 159.

The set-off should not have been allowed, the amount not being due at the time of commencement of the suit: Roig v. Tim, 103 Pa. 115; Pocono Spring Water Ice Co. v. American Ice Co., 214 Pa. 640.

The assignment by the legal plaintiff to the use-plaintiff did not affect the legal plaintiff's right to recover: Act of March 12, 1842, P. L. 66, Sec. 4; Corson v. Hunt, 14 Pa. 510; Humbird v. Davis, 210 Pa. 311.

The allowance of the item claimed by the plaintiff on account of the change of location of the railroad on which the work was done was a question of fact for the jury: Holland v. Kindregan, 155 Pa. 156; Sloan v. Philadelphia & Reading R. R. Co., 231 Pa. 332.

OPINION BY MR. JUSTICE POTTER, October 2, 1916:

The defendant in this case held a contract for building the Connellsville and State Line Railroad between Cumberland, Md., and Connellsville, Pa. In May, 1910, it awarded a subcontract to William M. Bates, the plaintiff, for portions of the work. The contract was verbal, but it was intended that it should be reduced to writing. Before this was done, plaintiff began work, and defendant made payments to him on account, aggregating $31,918.-54. While the work was in progress, defendant sent to plaintiff a form of written contract, and requested him to sign it. He declined to do so, claiming that it did not properly express the agreement, and, after considerable

correspondence, in the course of which plaintiff signed and sent to defendant a form of contract which was not accepted, defendant notified plaintiff that no further payments would be made to him until the written contract was executed. In reply plaintiff again refused to sign the paper, claiming it did not correspond with the verbal agreement, and he gave notice that, unless payments were made to him in accordance with the latter, he would be unable to continue the work, and would rescind the contract and bring suit for damages. As the payments were not made, plaintiff did rescind, and brought this suit claiming to recover a balance due for work actually performed, and for profits which he averred he would have made had he been permitted to carry out the contract.

Prior to the suit, plaintiff assigned his claim to the First National Bank of Connellsville, to secure an indebtedness to the bank. The suit was brought to the use of both plaintiff and the bank, and the amended statement recites the assignment.

The trial in the court below resulted in a verdict for plaintiff, for the sum of $27,749.91 and, from the judgment entered thereon, defendant has appealed.

In the first assignment of error, complaint is made that Bates was permitted to give certain conversations between himself and Mr. Carter, formerly an officer and stockholder in the defendant corporation, but who died before the trial.

Under Section 5 of the Act of May 23, 1887, P. L. 158, any person whose interest is adverse to the right of a deceased party to a contract, is prohibited from testifying. But in this case, Mr. Carter, the deceased, was not a party to the contract, nor can the fact that he was a stockholder in defendant corporation, be regarded as rendering the interest of the witness Bates adverse to him. To hold otherwise, would be to render parties to suits against corporations incompetent to testify as to any matter in connection with a stockholder who may

have died after the cause of action has arisen. It could not have been the legislative intent to carry the prohibition so far. It was the individual, personal, adverse interest which was to work a disqualification. In the present case it was the interest of the corporation defendant which was adverse to the witness, and the corporation is living.

In Allen's Est., 207 Pa. 325, the present Chief Justice, considering the clause of the Act of 1887, which is under construction in the case at bar, said (p. 327) : "Since the passage of the Act of 1887 competency is the rule; incompetency the exception. Departures from the common-law rules of evidence are for the legislature and when so made, inequalities, real or apparently so, resulting from the legislative removal of the disqualifications of witnesses, cannot be urged as reasons why judges ought not to read the words of legislators as they are written."

In Keating v. Nolan, 51 Pa. Superior Ct. 320, RICE, P. J., after quoting the above language of Mr. Justice BROWN, said further (p. 322) : "As was held shortly after the passage of the Act of April 15, 1869, P. L. 30, so it may be said, with even greater emphasis since the passage of the Act of 1887, the court, in order to act in good faith toward the legislative branch of the government, must discountenance all objections on the score of interest and policy unless they be made clearly to appear: McClelland's Exr. v. West's Adm., 70 Pa. 183." The first assignment is therefore dismissed.

In the second and third assignments, it is alleged that the trial judge erred in excluding evidence of the payment by defendant of $3,500 to Visconti, Soldano & D'Auria, who were subcontractors for a portion of the work contracted for by plaintiff, and in the exclusion of evidence of a written assignment by Visconti & Soldano to defendant, of their claim against plaintiff to the extent of such payment of $3,500. It is admitted that the plaintiff Bates was, at the time, indebted to his sub-

contractors, Visconti, Soldano & D'Auria, in a sum exceeding $6,000. But it is alleged that this indebtedness was not then payable, for the reason that, under the terms of the contract between Bates and his subcontractors, the latter were to be paid upon monthly estimates of the railroad company's engineer within three days after payment was made to plaintiff. In the offer of evidence which was rejected, there was a recital of the fact that by proceedings in Foreign Attachment in the Court of Common Pleas of Fayette County the firm of Visconti, Soldano & D'Auria had attached the moneys and credits of Bates which were in the hands of defendant company. Debts not yet due are subject to attachment, although the garnishee need not pay until maturity. But in this case the objection that the indebtedness was not then due, was based upon a technicality so bald that it deserves small consideration. Upon monthly estimates, and within three days of the time when defendant company paid Bates, he was bound to pay his subcontractors. The defendant company admitted indebtedness to Bates to the extent of $3,500.00 which was bound by the attachment. It might have held this amount to await the termination of the attachment proceedings. But Bates could not deny the indebtedness, he could only contend that, under a very technical construction of his agreement with his subcontractors, the money which he owed them was not then payable, because he had not been paid by the defendant and a period of three days after such payment had not elapsed. Under the circumstances, payment by the garnishee to his subcontractors should fairly be regarded as payment to Bates, as it went in discharge of his admitted indebtedness. The most that could then be said was that the payment thus made was three days in advance of the limit of time within which it could be withheld. The service of the attachment prevented defendant from making payment directly to Bates, and yet he contends that, until payment was actually made to him, his sub-

contractors could have no right to collect the amount
which admittedly he owed them. This would be an un-
reasonable construction to place upon the agreement.
It clearly appears that monthly estimates and monthly
payments were contemplated, and that the time of such
payments to the subcontractors was not to be delayed
more than three days after each monthly payment had
been made by defendant to Bates. It cannot be fairly
or reasonably inferred from the terms of the contract
that in any event payments were to be made otherwise
than monthly. The requirement that they should be
made at least that often, is as obvious and is quite as
imperative as the stipulation that they are to be made
within three days after Bates received his monthly pay-
ment. Under the circumstances, to hold that the in-
debtedness of Bates to his subcontractors could not be
collected because, technically, it was not payable until
the lapse of three days after Bates had been paid, would
be a perversion of justice. The offer to show the pay-
ment by defendant company, to the subcontractors of
Bates, in connection with the attachment proceedings,
should have been admitted, as being, under the circum-
stances, a proper set-off in the present suit. The second
and third assignments of error are therefore sustained.

Counsel for appellant complain, in the fifth and sixth
assignments, that the trial judge erred in admitting in
evidence the written assignment of plaintiff's claim to
the First National Bank of Connellsville, and in refus-
ing to affirm defendant's second point, to the effect that,
as the assignment was only a partial one, there could be
no recovery by the assignee. These objections are with-
out merit. No recovery was sought by the assignee.
The cause of action has not been split. Only one suit
has been brought, and that is for the entire amount of
the claim. The verdict and judgment are in favor of
William M. Bates, although marked for the use of his
assignee and himself.

Part of the claim of plaintiff was for the loss of

profits which he anticipated he would make, if he completed the contract. Defendant contended that the easier and less expensive portion of the contract had been performed before plaintiff stopped work, and that there would have been no profit for him in that which then remained to be done. In support of this contention, defendant offered to prove what it actually cost to complete the Bates contract, and that the work was done in a careful manner, and as economically and cheaply as possible. The purpose of the offer was to show that plaintiff could not have completed the contract at the prices claimed by him, except at a loss. Counsel for plaintiff objected to the admission of the offer, for the reason, among others, that it appeared in evidence that plaintiff had let and sublet all the concrete and third class masonry work involved in his contract, and also part of his contract for excavation. The objection was sustained by the trial judge, and his action in so doing, is made the subject of the seventh assignment of error. It did not appear that plaintiff had sublet the entire work which was yet to be done, nor was the financial ability of the subcontractors to complete the work, for the prices named, shown.

In 2 Sedgwick on Damages (9th ed. 1912), Section 636m, it is said (p. 1268) : "If the period fixed for the complete performance of the contract has passed before the trial, there is no uncertainty as to the actual cost of performance.......The contract price, and the exact cost of performance can be shown, and the difference between them is the measure of damages." Citing Masterton & Smith v. Mayor of Brooklyn, 7 Hill (N. Y.) 61.

In Clyde Coal Co. v. Pittsburgh & Lake Erie R. R. Co., 226 Pa. 391, it was held, as set forth in the syllabus, that "profits arising from a subsequent contract, though made on the faith of the original contract, and capable of definite ascertainment, are not recoverable in an action for the breach of the original contract."

Our Brother MESTREZAT, after an examination of the

authorities on the subject, there said (p. 400) : "From these and other adjudicated cases the doctrine may be regarded as settled that for the breach of a contract damages may be recovered for loss of profits, the direct and immediate fruits of the contract itself and ascertainable with reasonable certainty, when they are the natural result of such breach, or which, under the circumstances, the parties may have contemplated at the execution of the contract as the probable result of its breach; but damages for the loss of profits for the violation of a contract may not be recovered where they are uncertain, remote or speculative, or when they grow out of a subsequent collateral or subordinate undertaking which was entered into upon the faith of the principal contract." Under the principle thus set forth, the evidence offered by defendant, as to the actual cost of the completion of the work, should have been admitted.   It was not enough for plaintiff to show that he had a previous contract under which it had been agreed that the work would be done for less money.   The question was whether such a contract would have been carried out, and the work actually completed at a profit to plaintiff.

The eighth assignment is to the refusal of defendant's sixth point, which requested the trial judge to charge that plaintiff was not entitled to recover, because the contract was an entire one, and no action could be maintained upon it until the time for its expiration had arrived.

The verbal contract, so far as the testimony shows, did not fix any time limit for performance.   In the form of contract afterwards sent to plaintiff by defendant it was provided that the work should be completed on or before January 1, 1911.   In the modification attached to the contract by plaintiff and signed by him it was provided that the time for completion should be April 1, instead of January 1, 1911.   The present suit was brought March 25, 1911.

As defendant refused to accept plaintiff's modifications of the contract, one of which was the change from January 1, 1911, to April 1, and insisted on retaining the former date, it is inconsistent to claim at this time that April 1st, was the date when the contract expired. Plaintiff's claim was not based on the unaccepted written contract, but on a verbal contract, which did not specify any date for completion of the work. Even if defendant's contention that a suit brought six days before the expiration of the limit fixed for the completion of the work to be done under the contract should be sustained, it would not apply to the present case, in which there was no stipulation as to date for completion.

In the ninth assignment, the court below is charged with error in submitting to the jury plaintiff's claim for extra hauling alleged to have been caused by a change in the location of the line of the railroad. It is admitted that the line was changed by the railroad company, after the contract was made. But whether or not the change increased the expense of the work for plaintiff was a disputed question of fact. The evidence as to this point was conflicting, but the credibility of the witnesses was for the jury, and the trial judge did not err in submitting to them the question whether the change of location imposed additional expense upon plaintiff in the performance of the contract. The jury should have been cautioned against accepting the results of guess work in this connection, as against the testimony of the engineers in charge of the work, based upon their records, which were presumably accurate.

The second, third, and seventh assignments of error are sustained, and the judgment is reversed with a venire facias de novo.