Rosche *v.* McCoy, Appellant.

616

Argued October 7, 1959.  Before JONES, C. J., BELL, JONES, COHEN, BOK and McBRIDE, JJ.

618

reargument refused December 31, 1959.

*William J. Joyce*, with him *Martin E. Cusick*, and *Wiesen, Cusick, Madden, Joyce, Acker & McKay*, for appellant.

*Cyril T. Garvey*, with him *Chester B. Scholl*, and *Evans & Garvey*, for appellees.

OPINION BY MR. JUSTICE MCBRIDE, November 25, 1959:

This is an appeal from a judgment entered on a verdict for plaintiff in a negligence case. The accident occurred on October 22, 1954, in Sharon, Pennsylvania, when a vehicle, being driven by Fred McCoy, in a southward direction on Flowers Avenue, came in contact with the minor plaintiff, Dennis Rosche,[1] causing a head injury to him which was permanent in nature. The action was commenced by William Rosche as parent and natural guardian both in his own right and on behalf of Dennis. Prior to the trial the defendant,

---

[1] Dennis was born August 11, 1949. Therefore, he was five years two months old when the accident occurred.

Fred McCoy, died and his executor, Frank C. McCoy, was substituted for him on the record. The defendant joined the father and mother of Dennis as additional defendants. On November 8, 1956, the deposition of Fred McCoy was taken to perpetuate his testimony and in May, 1957, during the lifetime of Fred McCoy, the deposition of the minor plaintiff, Dennis, was taken. At that time Dennis was 7 years 9 months old. The trial commenced on February 3, 1958 and concluded on February 6, 1958. The jury returned a verdict in favor of the parent, William Rosche, in his own right and also on behalf of the minor child. Defendant filed motions for judgment n.o.v. and for a new trial. These were denied and judgments were entered on the verdict. On appeal the motion for judgment n.o.v. has not been pressed. In any event, the evidence actually received by the court, whether its rulings thereon were right or wrong, must be considered in deciding such a motion. *Cherry v. Mitosky,* 353 Pa. 401, 45 A. 2d 23; *Hershberger v. Hershberger,* 345 Pa. 439, 29 A. 2d 95. The court below correctly refused to enter judgment n.o.v. on the authority of *Van Buren v. Eberhard,* 377 Pa. 22, 104 A. 2d 98.

It is contended, however, that the verdict was against the weight of the evidence. This question is within the discretion of the trial judge, and his decision thereon will not be reversed unless for clear abuse of that discretion. Such abuse has not been shown.

Appellant presses upon us that there were serious trial errors. The most important is that the court admitted the testimony of Carolyn Laou, whose birth date is not shown by the evidence but who was 4 years of age at the time of the accident and 7 years of age at the time she testified. The court ruled that she was competent.

Competency is the rule and incompetency the exception. *Allen's Estate,* 207 Pa. 325, 327, 56 Atl. 928;

*Pattison v. Cobb,* 212 Pa. 572, 573, 61 Atl. 1108; *Bates v. Carter Const. Co.,* 255 Pa. 200, 205, 99 A. 813, 814. The burden to show incompetency lies upon the party who asserts it. *McClelland's Executor v. West's Administrator,* 70 Pa. 183, 187, so decided under the Act of April 15, 1869, P. L. 30; *Bates v. Carter Construction Co.,* 255 Pa. 200, 205, 99 Atl. 813, 814, interpreted the Act of May 23, 1887, P. L. 158, which repealed the Act of 1869, supra, to the same effect. Neither act rendered any person incompetent who was competent before its passage. *Paschall v. Fels,* 207 Pa. 71, 79, 56 Atl. 320, 323; *Groome's Estate,* 337 Pa. 250, 255, 11 A. 2d 271, 273; *Brown's Estate,* 131 Pa. Superior Ct. 463, 467, 200 Atl. 940, 941, 942.

The question of competency of persons said to be mentally immature due to infancy is to be determined in the discretion of the trial judge after an' inquiry as to mental maturity once the fact of infancy appears on the record or is obvious to the judge. This discretion, however, is not absolute but legal. Nevertheless, it will not be reversed in the absence of abuse.

In the earlier common law the ability of a child of tender years to understand the obligation of an oath was the pivotal factor because it was thought that otherwise the child might be giving what amounts to unsworn testimony. That was the view originally taken by the trial judge when the question of competency was first raised. Thereafter, however, he applied the rule that no particular age has been held to be conclusive of incapacity and that the question must be judicially ascertained in the light of the facts and circumstances surrounding the particular case. However, the issue is not to be determined merely because of the capacity of the witness at the time he is called to communicate his thoughts in terms of language. There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame

and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth. These first two considerations are in some instances easily answered where a 7 year old witness is called upon to testify as to a very recent event, particularly where the testimony covers a simple and uncomplicated fact. The situation, however, is not the same where a 7 year old witness is called upon to testify what that witness saw when she was 4 years of age. See *Commonwealth v. Furman*, 211 Pa. 549, 60 Atl. 1089; *Piepke v. Philadelphia & Reading Railway Company*, 242 Pa. 321, 89 Atl. 124.

The presently prevailing rule (in the absence of statute) is that competency is presumed where the child is more than 14 years of age. Under 14 there must be judicial inquiry as to mental capacity, which must be more searching in proportion to chronological immaturity. In the disposition of such a question the courts are confronted by conflicting policies. One is that a party should not be denied justice because reliance necessarily must be placed upon the testimony of a child of tender years. But, on the other hand, experience has informed us that children are peculiarly susceptible to the world of make-believe and of suggestions. Care must be exercised to keep the balance true as between these conflicting claims. So it is that much must be left to the discretion of the trial judge who hears and sees the witness.

No case in this Commonwealth has been called to our attention or discovered by our own research which passed upon competency of a 7 year old child to testify as to events which occurred when she was 4 years old. It is obvious that had she been called as a witness at the time of *this* occurrence, when she was but 4 years of age, she would have been incompetent. See *Com-*

*monwealth v. Goldman,* 127 Pa. Superior Ct. 523, 193 Atl. 112, where the Superior Court refused to sustain a verdict which relied on the testimony of a 5 year old. Carolyn's *memory* of the event and its details did not, indeed it could not, improve as time went on. The only thing that did improve was her capacity to communicate in terms of words. But that capacity is meaningless unless supported by the capacity to note the occurrence at the time it happened and the ability to remember it.[2]

---

[2] In this case the court did make an inquiry: "Q. Young lady, will you tell me your name please? A. Carolyn Laou. Q. How old are you? A. Seven years old. Q. Do you go to school? A. Yes. Q. Where do you go to school? A. Hadley. Q. What grade are you in? A. Second. Q. Do you go to church? A. Yes. Q. What church do you go to? A. Oak Creek Church. Q. How long have you been going to church? A. I don't know. Q. When you are in church, do you go to Sunday School? A. Yes. Q. Do you know what it means to tell the truth? A. Yes. Q. Do you know what it means to swear to tell the truth? A. No. Q. If you were to take an oath, do you know what that would mean? A. Yes. Q. If you take an oath to tell the truth and you didn't tell the truth, what do you believe will happen? Do they teach you anything in church as to what happens to people that tell lies? A. No, sir. (At this point counsel and the trial judge stepped outside of chambers for a conference.) After their return the court continued questioning as follows: Q. Is your name Carolyn? A. Yes. Q. Carolyn, do they teach you in Sunday School where you go if you are a good girl? A. Yes. Q. Do they teach you where you go if you are not a good girl? A. Yes. Q. And where is that? A. To the devil. Q. Do they teach you what happens to people who tell lies? A. No. Q. Carolyn, will you step out with your mother a minute? (Mary Laou and Carolyn Laou withdrew from chambers) Upon their return the court resumed: Q. Carolyn, do you believe that it is good or bad to tell a lie? A. Bad. Q. If you were placed on the stand in there and you were asked questions by me or by Mr. Garvey or one of these other attorneys—there are lots of them, aren't there—would you answer the truth, or not? A. The truth. Q. Carolyn, if I ask you to lift your hand to God and be sworn, would you know what I mean by that? A. No."

In *Commonwealth v. Allabaugh,* 162 Pa. Superior Ct. 490, 58 A. 2d 184, testimony as to an act of sodomy occurring shortly before was admitted on the part of a child-victim almost six years old because of her statement that if she did not tell the truth she would be *punished* in various ways. In *Commonwealth v. Furman,* supra, an 8 year old witness was permitted to testify after he stated that he knew he must tell the truth. The testimony was not material to the establishment of guilt and had no practical bearing on it. In *Commonwealth v. Troy,* 274 Pa. 265, 118 Atl. 252, a 9 year old witness met the required test when he testified that if he did not tell the truth he would go to hell. Competency had been attacked solely because he could not remember the name of an aunt.

In the present case the testimony of the 7 year old girl as to events occurring approximately 3 years before was material to the whole issue. Here her testimony was not to a simple fact, such as that a dog bit her or that it was her father who shot her mother. Her testimony involved the exercise of contemporaneous judgment as to different factors ordinarily beyond the comprehension of a 4 year old child. It was not shown that she was precocious, but, on the other hand, her testimony did not show that she was not an ordinarily intelligent child for her age. The important part of her testimony on direct examination was as follows: "Q. Tell us what happened that day. A. Well, he was on the other side of the street and he walked in the middle of the street and he was calling us names and a car came up from State Street and it came down and it turned and we told him to get out of the way and he didn't listen and the car came down and hit him and the guy came and he picked him up and he took him in the car and he took the shoes in there. Q. What side of the street were you on, honey? A. I was on the side I live. Q. And on what side was Denny

on before he walked into the street? A. He was on Mrs. Moran's side—the other side of the street." On cross-examination her essential testimony remained unshaken but she did not remember how long she had been on the sidewalk, nor whether she had her lunch that day before the accident, nor how long Dennis had been in the street, although she later stated he had been standing there about "ten minutes".

The whole of her testimony shows (1) that Dennis walked and did not run into the street and was standing at the time of the accident; (2) that he had been on the other side of the street; (3) that she pointed out by use of a toy automobile that he had been struck by the right front part of the automobile; (4) that at the time of the accident automobiles were on her side of the street but none on the side whence Dennis came; (5) that the car stopped "pretty close to our side of the street"; (6) that she had not discussed the matter with anybody since witnessing the occurrence except counsel trying the case on two occasions; (7) that she had never seen Dennis in the street before. The importance of this evidence on the issue of defendant's negligence and lack of negligence of the parents is obvious. However, if she was competent its weight was for the jury.

In our opinion the witness, under the circumstances, was not competent to give the testimony that she did and the trial judge abused his discretion in allowing it.

Appellant next complains that the court erred in admitting the deposition of the minor plaintiff taken while the original defendant was still alive. As above noted, the original defendant was dead at the time of the trial. In proof of plaintiff's case the oral testimony of the minor plaintiff as the surviving party to the accident was not offered nor was his deposition. It would appear that the defendant, being an elderly man, and counsel desiring to perpetuate his testimony as to

the accident, had taken his deposition for that purpose. This deposition was offered in evidence by defendant who now contends that under §5 of the Act of May 23, 1887, P. L. 158, 28 P.S. §322, Dennis was incompetent to testify as to events occurring before the death of McCoy and was not rendered competent by the introduction in evidence of McCoy's deposition, citing *Evans v. Reed*, 84 Pa. 254; *Speyerer & Co. v. Bennett's Executors*, 79 Pa. 445. Both of these cases, however, were decided under the Act of 1869, prior to the passage of the Act of 1887, supra, which repealed it. After defendant had produced this deposition the plaintiff offered the oral testimony of the minor plaintiff which the court below refused to hear. Then the plaintiff offered the deposition of the minor plaintiff which had been taken during the lifetime of defendant's decedent.

We hold that the court was in error in excluding the oral testimony of the minor plaintiff and that in any event its action in admitting that part of the deposition which it did admit was not error which was prejudicial to the defendant. See Rule 4020, Penna. Rules of Civil Procedure. McCoy's deposition was offered as substantive evidence and was treated as the testimony of all other witnesses. Hence the defendant waived the benefit of the Act of 1887, supra, even though the amendment of 1891 does not apply.[3] Furthermore, the

---

[3] Section 1 of the Act of June 11, 1891, P. L. 287, 28 P.S. 325, reads as follows: "Hereafter in any civil proceeding before any tribunal of this Commonwealth, or conducted by virtue of its order or direction, although a party to the thing or contract in action may be dead or may have been adjudged a lunatic, and his right thereto or therein may have passed, either by his own act or by the act of the law, to a party on record who presents his interest in the subject in controversy, nevertheless any surviving or remaining party to such thing or contract or any other person whose interest is adverse to the said right of such deceased or lunatic party, shall be a competent witness to any relevant matter, although

defendant did call another living witness. This fulfills the condition precedent in the Act of 1891, supra, of "another person who may be living at the time of the trial and may be competent to testify, and who does so testify . . ." as to the occurrence. Once the living witness is called the surviving party is competent to testify to the "relevant matter" and not merely a particular facet of it which is covered by the "living witness". Upon retrial the court below should inquire into the competency of the minor plaintiff in accordance with the principles we have outlined in respect of the testimony of Carolyn Laou, and if satisfied that he is competent and defendant offers in evidence the deposition of his decedent or the testimony of a living witness to the relevant matter, then the testimony of the minor plaintiff is admissible. This does not preclude the plaintiff from offering the deposition of McCoy, or such parts of it as are admissible but that would not thereby make the oral testimony of the minor plaintiff admissible.

Appellant next complains that the court below erred in admitting into evidence a mortality table and in its instruction as to its use. The tables that were used were not the Carlisle Tables the reliability of which was questioned in *McCaffrey v. Schwartz*, 285 Pa. 561, 132 Atl. 810, and *Aylesworth v. Hays*, 299 Pa. 248, 149 Atl. 495, but were the United States Life Tables for the years 1949-1951 published by the U. S. Department of Health, Welfare and Education under

---

it may have occurred before the death of said party or the adjudication of his lunacy, if and only if such relevant matter occurred between himself and another person who may be living at the time of the trial and may be competent to testify, and who does so testify upon the trial against such surviving or remaining party or against the person whose interest may be thus adverse, or if such relevant matter occurred in the presence or hearing of such other living or competent person."

date of November 23, 1954. These Tables state that "the life tables are based on the 1950 census of population and deaths of the 3-year period 1949-1951 for the entire continental United States . . . Nine detailed life tables are contained in this report. Life tables are given for whites and nonwhites, separately by sex, and for both sexes combined, and also for the total population and for total males and total females . . . Prior to the calculation of the values of the life tables, the more serious errors were examined carefully, and the basic data were adjusted to remove errors when corrections were available or could be derived." United States Life Tables: 1949-51, page 5. These tables were admissible. The use made of them and the instructions of the court thereon, however, pose a different question.

The court, while cautioning the jury against using such tables as rigid formulae and that they should only be used as a guide did not follow our instruction in the *McCaffrey* case, supra, wherein we said "The charge must include a survey of such matters as sex, prior state of health, nature of daily employment and its perils, if any, manner of living, personal habits, individual characteristics and other facts concerning the injured party which may affect the duration of his life . . .". Such requirements are still applicable to cases where the evidence is subject to the proof of such matters. See *Seifred v. Pa. R. R.*, 206 Pa. 399, 55 Atl. 1061; *Kerrigan v. Pa. R. R.*, 194 Pa. 98, 44 Atl. 1069; *Steinbrunner v. Pittsburgh, etc., Ry. Co.*, 146 Pa. 504, 23 Atl. 239; *Pauza v. Lehigh Valley Coal Co.*, 231 Pa. 577, 80 Atl. 1126; *DiPierto v. Great Atlantic and Pacific Tea Company*, 315 Pa. 209, 173 Atl. 165. But it is obvious that no such dogmatic requirement may be required of a trial judge in a case involving injury to a child of tender years. In *Dichiero et al. v. Pittsburgh Railways Co.*, 313 Pa. 93, 169 Atl. 82, we held that in the case of a 7 year old child it is not necessary to

prove, by direct evidence, what diminution of earning power he sustained by showing what he would probably earn in the future. In *Brzyski v. Schreiber*, 314 Pa. 353, 357, 171 Atl. 614, a permanent injury to the head of the child was sufficient of itself to warrant submission of the question of his loss of earning power to the jury. The rationale of these cases and the difference between a charge regarding the use of mortality tables in the case of a wage earner and that of a child convinces us that the charge of the trial judge was not inadequate.

Finally, appellant complains that plaintiff's counsel, in his opening statement, told the jury that the law firm of which defense counsel was a member "does a lot of defense work in the valley . . .". Counsel for defendant placed the statement of record and moved for the withdrawal of a juror, which the court below denied without any cautionary instruction. This kind of argument has no proper place in the trial of a case. The court below, however, found that it did not prejudice the defendant before the jury and we do not say that the court below abused its discretion; but if the case is tried again, it ought not to be repeated.

Counsel for plaintiff also elicited from William Rosche, father and guardian of the minor, the fact that no medical examination had been conducted at the request of the defendant, and then stated: "I would also like to have the Court note that there was agreement that the defendant might have the minor plaintiff examined." The trial judge sustained an objection to this remark but refused a motion for withdrawal of a juror without giving cautionary instructions. Again, we do not say that the trial judge abused his discretion; but this type of statement also should not be repeated. Despite the agreement, if it did exist, defendant was perfectly justified in not making the examination and the failure to make it was not proper comment

to the jury. Cf. *Rice v. Hill,* 315 Pa. 166, 172 Atl. 289. This does not mean that plaintiff's counsel is prevented from arguing, if it be a fact, that the medical evidence of plaintiff has not been contradicted.

The judgments are reversed and a new trial granted.