J-S26037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
VINCENT JACKSON :
:
Appellant : No. 2155 EDA 2018

Appeal from the PCRA Order Entered June 15, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010976-2014

BEFORE: PANELLA, P.J., GANTMAN, P.J.E., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.: **FILED JUNE 27, 2019**

Vincent Jackson (Jackson) appeals *pro se* from the order of the Court of

Common Pleas of Philadelphia County (PCRA court) dismissing his petition filed

pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.

We affirm.

**I.**

The relevant procedural history of this case is taken from the PCRA

court's opinion and our independent review of the certified record. In 2015,

a jury found Jackson guilty of aggravated assault with attempted serious

bodily injury (18 Pa.C.S. § 2702); promoting prostitution (18 Pa.C.S. § 5902);

firearms not to be carried without a license (18 Pa.C.S. § 6106); corruption of

the morals of a minor (18 Pa.C.S. § 6301); carrying firearms on public streets

_____

* Retired Senior Judge assigned to the Superior Court.

(18 Pa.C.S. § 6108); and possession of an instrument of crime (18 Pa.C.S. § 907).

He was sentenced on October 13, 2015, as follows: 7.5 to 15 years as to the aggravated assault count; 2.5 to 5 years as to the promoting prostitution count, to run consecutively; and 5 years of probation as to the firearm possession count, to run concurrently. He was not sentenced on the remaining counts.

Jackson appealed and on April 5, 2017, this Court affirmed his judgment of sentence in *Commonwealth v. Jackson*, No. 215 EDA 2016 (Pa. Super. April 5, 2017). Jackson did not seek review in the Pennsylvania Supreme Court and the judgment of sentence became final on May 5, 2017.

Jackson timely filed his PCRA petition on October 16, 2017. His counsel then filed a *Turner*/*Finley* no merit letter,[1] which the PCRA court accepted allowing counsel to withdraw. The PCRA court then issued a notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Jackson filed a response to the Rule 907 Notice on April 27, 2018, and on June 15, 2018, the PCRA court formally dismissed his PCRA petition.

---

[1] *Finley v. Pennsylvania*, 481 U.S. 551 (1987), and *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988).

Jackson filed a timely appeal with this Court and then complied with Pa.R.A.P. 1925(b). The PCRA court entered its opinion on September 26, 2018. *See* PCRA Court 1925(a) Opinion, 9/27/2018.

Jackson now presents the following issues for our review:

I. Ineffective assistance of counsel for failing . . . to request a competency hearing for Commonwealth witness M.M., who was a minor; failing to investigate the telephone records used as evidence against [Jackson]; [and] failing to impeach Commonwealth witnesses, M.M. and Adonis Fountain with their prior inconsistent statements.

II. Abuse of discretion where the [PCRA] court assumed the role of an advocate during the direct examination of Adonis Fountain.

Appellant's Brief, at 4. None of Jackson's claims have merit.[2]

**II.**

Previously, in Jackson's direct appeal, this Court summarized the pertinent case facts:

Adonis Fountain rented a hotel room at the Roosevelt Inn with his friend "D" and an unknown female around midnight on March 31, 2014. Trial Transcript, 8/5/2015, at 50–54. While walking to their room on the second floor, Fountain got a "weird vibe" from a male, later identified as [Jackson], who was walking towards them from the other end of the hallway. [Jackson] was staring at Fountain as if he knew him. [Jackson] and Fountain crossed paths. Fountain realized that his room was at the other end of the hallway and turned around. **[Jackson] and Fountain crossed paths a**

---

[2] "When reviewing the denial of a PCRA petition, our standard of review is limited to examining whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error." ***Commonwealth v. Pew***, 189 A.3d 486, 488 (Pa. Super. 2018) (citation omitted).

**second time. Within seconds, [Jackson] fired multiple shots at Fountain, but missed.** *Id.* at 55–58.

Fountain dove around a corner and ran down a flight of stairs to the first floor of the hotel. As he ran towards the lobby exit, he saw [Jackson] running towards him with a gun from the other end of the hallway. Fountain ran back around a corner towards the stairs, crouched down in a "defensive position," and fired a single shot into the wall directly across from him. [Jackson] continued to run towards Fountain, firing shots in his direction. Fountain ran back up the stairs to the second floor and eventually exited the hotel. *Id.* at 59–62, 89–95; Trial Transcript, 8/6/2015 at 2–17.

**Video surveillance from the Roosevelt Inn captured the incident.** Portions of the video were broadcasted on the news. Fountain had dreadlocks in the video and testified that he cut them off after he saw himself on television. He was arrested at his home in June 2014 with the firearm that he used on the night of the shooting. Trial Transcript, 8/5/2015 at 64–66.

On May 15, 2015, Fountain entered into a negotiated guilty plea to [two firearm possession charges]. In the memorandum of agreement attached to the written guilty plea colloquy, Fountain identified [Jackson] as the person who shot at him at the Roosevelt Inn. *Id.* at 76–82; Trial Transcript, 8/6/2015 at 18–25. Fountain identified himself, the shooter, and his friend "D" on the video at trial. Trial Transcript, 8/5/2015 at 89–95; Trial Transcript, 8/6/2015 at 6–18.

. . . .

**MM (age 16) testified that she met [Jackson] while working as a prostitute at the Roosevelt Inn in the fall or winter of 2013.** Trial Transcript, 8/6/2015 at 108–13, 122. MM thought [Jackson] was "nice" and "didn't seem like a bad person"—she "thought he was just a drug dealer." *Id.* at 114. [Jackson] and MM smoked marijuana together the first time they met. After they smoked, [Jackson] and some of the guys he was with asked her to come to another room in the hotel with them. MM understood that to mean she would be working for them as a prostitute. *Id.* at 115–17.

The next morning, MM agreed to work for [Jackson] as a prostitute—she told him that she would give him all of the money

she earned from prostituting as long as he gave her cigarettes, drugs, and food in return. *Id.* at 117. [Jackson] agreed. He then took MM to a Target . . . and told her that he would buy her whatever she needed.

. . . .

[Jackson] and MM went to the [Roosevelt Inn] next door to the Target. [Jackson] posted an ad offering MM for sex on "Back Page," a website similar to Craigslist, and MM started receiving calls from men who wanted to have sex with her—she called them "dates." *Id.* at 118–20. [Jackson] and MM continued to work together at different hotels. She testified that she stopped working for [Jackson] for a short period of time and went to work for another pimp, but started working for him again shortly thereafter. *Id.* at 120–21.

. . . .

MM testified that [Jackson] and she stopped going to the Roosevelt Inn in early March 2014 because [Jackson] shot somebody in the leg during a shootout at the hotel. *Id.* at 125–26, 163–64. They worked out of hotels near the airport instead. However, MM, [Jackson], and two other girls who worked for him . . . went to the Roosevelt Inn on the night of the shooting "because the money was supposed to be good there that day." *Id.* at 126–28.

MM had three "dates" on the night of the shooting. She testified that when she opened the door to her room for the first date around 7 p.m., she saw [Jackson] and a male with dreadlocks give each other "dirty looks." *Id.* at 128–30. Within seconds of closing the door to her room when the third date arrived, she heard "a lot" of gunshots in the hallway. *Id.* at 129–34. MM finished her date and tried to call [Jackson] on his cell phone. He would not answer, so she called and texted his brother, John. *Id.* at 135. MM testified that she met John through [Jackson], and that she had been to John's apartment near[.] *Id.* at 127. She also reached out to [Jackson's] friend "Fat Boy". Fat Boy told MM that he would call her if he heard from [Jackson]. *Id.* at 136–37.

[Jackson] called MM from John's phone around 5 a.m. and said that he was "in pain from running." **MM testified that [Jackson] told her that he dropped and shattered his phone while he**

**was running on Bustleton Avenue, and that he threw his gun in a trashcan and the clip in a nearby yard**. *Id.* at 136–37. He told MM to retrieve the gun and meet him at 31st and Tasker Street. **MM retrieved the gun, clip, and SIM card exactly where he told her it would be**. *Id.* at 175–77. She then took a cab to 31st and Tasker Street. *Id.* at 137–43. [Jackson] and John picked MM up and drove to John's house. [Jackson] put the SIM card into a new phone. *Id.*

On April 5, 2014, MM and another girl who was working for [Jackson] as a prostitute went to the Four Points Sheraton in Northeast Philadelphia. A few hours after they arrived, an undercover officer posing as a client asked to have a "date" with both of them. They agreed. Seconds later, police entered the room and arrested MM and the other girl. *Id.* at 144–47.

MM told officers that she had information about the instant case. **Officers showed MM a video of the shooting at the Roosevelt Inn—she identified [Jackson] as the person in the baggy hoodie and jeans who is seen shooting at Fountain on the first and second floors of the hotel**. *Id.* at 148–53.

**[An officer] testified that MM provided detectives with [Jackson's] cell phone number[.] Based on that information, he prepared and served a search warrant on T–Mobile for call detail records**. Trial Transcript, 8/6/2015 at 186–89. He also obtained an arrest warrant for [Jackson].

On June 18, 2014, [Jackson] was arrested at his brother's home[.] [Jackson's] brother, John Gamble, was home at the time of the arrest. **A search warrant was prepared and executed for his cell phone**[.] *Id.* at 195–99. **Cell phone records corroborated MM's testimony that text messages were exchanged between John Gamble and MM** on March 31, 2014. *Id.* at 199–201. Gamble had the same phone number stored for [Jackson] that MM provided. *Id.*

**Records for [Jackson's] cell phone showed that he called MM approximately one hour prior to the shooting** at 11:05 p.m. on March 30, 2014. **GPS coordinates placed the phone in close proximity to the Roosevelt Inn**. The last outgoing call with GPS data was made to an unknown person at 11:29 p.m. in the same location. The next traceable calls were made on March

31, 2014 at 6:41 p.m. near 65th Street and Haverford Avenue; 6:44 p.m. near 63rd and Walnut Street; and 1:03 a.m. and 8:02 a.m. near 33rd and Wharton Street, less than two blocks from [Jackson's] brother's home. ***Id.*** at 201–16.

***Jackson***, No. 215 EDA 2016 (footnotes omitted, emphases added).

## III.

To prevail on an ineffective assistance of counsel claim, the petitioner must prove:

(1) the underlying legal claim was of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) the petitioner was prejudiced – that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different.

***Commonwealth v. Pier***, 182 A.3d 476, 478-79 (Pa. Super. 2018) (citations omitted). "[F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." ***Commonwealth v. Robinson***, 877 A.2d 433, 439 (Pa. 2005) (citation omitted).

"[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009) (quoting 42 Pa.C.S. § 9543(a)(2)(ii)). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Johnson***, 966 A.2d at 532.

A PCRA claim may be denied without a hearing at the court's discretion when "there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings." *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Blakeney*, 108 A.3d 739, 749-50 (Pa. 2014) (quoting *Roney*, 79 A.3d at 604-05).

**A.**

As to his claim of ineffective assistance of counsel for failing to request a competency hearing for M.M., we hold that trial counsel was not ineffective by declining to challenge her competence to testify. She was 16 years and eleven months old at the time of the trial and was presumed to be competent as a matter of law. *See generally Rosche v. McCoy*, 156 A.2d 307, 309-10 (Pa. 1959) (competency hearing is only required where witness is under the age of fourteen); *see also Commonwealth v. Pena*, 31 A.3d 704 (Pa. Super. 2011). The burden is on the party asserting incompetence to establish it. *Rosche*, 156 A.2d at 309-10.

M.M. testified at length during the trial, demonstrating her capacity to relate what she had experienced. Much of her account was also corroborated

by other evidence. Jackson identifies no facts which would put in doubt M.M.'s ability to answer questions truthfully and coherently.

Rather, Jackson's brief seems to conflate the concepts of credibility and competence, suggesting that M.M. should not have been able to testify due to her youth, motive to lie and inability to recall events. *See* Appellant's Brief, at 10-14. He argues that the inconsistencies in her testimony and the roles of other parties are evidence that she was not competent. *Id.* However, these factors go to the weight of her testimony, not to her competence to testify. *See Rosche*, 156 A.2d 307.[3]

Accordingly, Jackson's trial counsel had no basis to request a competency hearing, and had it been sought, there was no reasonable probability that it would have been granted. *See* PCRA Court 1925(a) Opinion, 9/27/2018, at 9 ("Had counsel requested a competency hearing, it would not have been granted."). Where an issue is clearly without merit, counsel does not perform ineffectively by failing to assert it. *See Commonwealth v.*

---

[3] Jackson similarly conflated weight with admissibility when arguing in his brief that defense counsel should have sought to suppress M.M.'s statements to police because she was not represented by counsel at the time they were given. *See* Appellant's Brief, at 19. If M.M.'s right to counsel was violated when she spoke to police and implicated Jackson, then that fact went to the weight of her testimony, and Jackson lacked standing to challenge the admission of the statement based on that violation. This specific claim is also waived because it was not presented in Jackson's PCRA petition. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544(b); Pa.R.A.P. 302(a).

*Spotz*, 896 A.2d 1191 (Pa. 2006). Thus, the PCRA court correctly found no merit in this ineffectiveness claim.

**B.**

Nor did the PCRA court err in denying Jackson's claim of ineffectiveness based on the supposed failure to impeach M.M. and Fountain. Jackson's argument here is that the two witnesses could have been discredited if pressed on their motive to testify in the Commonwealth's favor. The certified record of their respective testimony shows that defense counsel, in fact, *did* confront them with their pending criminal charges and motives to assist the prosecution in exchange for a plea deal. *See* Trial Transcript, 8/6/2015, at 29-42, 139, 156-68, 179-80. A PCRA petitioner cannot prevail on a claim of ineffectiveness by asserting that counsel failed to do something that counsel actually did.

In his appellate brief, Jackson raises additional arguments as to defense counsel's failure to impeach these witnesses with inconsistent statements. He contends, for example, that Fountain lied about when he discharged his weapon during the shoot-out and whether he had previously been to the hotel where it occurred. *See* Appellant's Brief, at 16-17. Jackson waived those grounds by not including them in his PCRA petition and they cannot be considered here on appeal. *See* 42 Pa.C.S. § 9543(a)(3) (a PCRA petition must prove that a claim has not been waived or previously litigated); *see also* Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it

- 10 -

but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

## C.

Jackson next argues that trial counsel was ineffective by failing to investigate the telephone records used against him at trial. *See* Appellant's Brief, at 19-21. He asserts that had counsel been more thorough by investigating those records, M.M. and one of the investigating officers could have been impeached. He also argues for the first time on appeal that trial counsel was ineffective by not seeking to suppress the telephone records as the fruit of an illegal search. *See* Appellant's Brief, at 19-20.

The PCRA court did not err in denying these claims because Jackson failed to establish any of the elements of ineffectiveness. Jackson did not specify what more trial counsel could have done to investigate the phone records and how such an investigation would have benefited his defense. He did not assert how he was prejudiced and there is no indication from the record that the outcome of the proceedings would have been different had some additional step been taken.

As outlined in the record facts above, the police used the telephone number provided by M.M. to identify calls between her and Jackson. The police executed a search warrant to retrieve Jackson's phone and obtain his

call logs. The information stored in the phone and the call logs linked Jackson to the shooting. Nothing in the record calls into question the veracity or weight of that evidence. His role in the shooting was also proven independently by surveillance video showing him discharging a weapon in the Roosevelt Inn.

Further, Jackson's suppression claim is waived because he did not raise it in his petition. **See** 42 Pa.C.S. § 9543(a)(3); 42 Pa.C.S. § 9544(b). Even if the claim were preserved, it would be denied because Jackson did not specify the factual or legal basis for such a motion nor any of the elements of ineffective assistance of counsel. Nothing in the record suggests that the phone or the call logs were illegally obtained by police.

**D.**

Finally, as the PCRA court correctly determined, Jackson waived his claim that the trial judge assumed the role of an advocate. Jackson did not assert this claim in his PCRA petition. **See** PCRA Petition, 10/16/2017, at 3-4. By raising the issue for the first time in his rule 1925(b) Statement, he failed to preserve it for appeal. **See** 42 Pa.C.S. §§ 9543(a)(3); 9544(b).

The issue is waived for an additional reason – Jackson vaguely asserts that the trial court had improperly advocated for his co-defendant, Fountain, during the witness's examination. This issue is framed purely in terms of trial court error rather than a claim that defense counsel performed ineffectively. As such, the issue is not cognizable under the PCRA and had to be raised instead on direct appeal. **See Commonwealth v. Santiago**, 855 A.2d 682,

691 (Pa. 2004) ("We have stressed that a claim not raised in a PCRA petition cannot be raised for the first time on appeal."); ***see also Commonwealth v. Lambert***, 797 A.2d 232, 240 (Pa. 2001) (holding that claims which could have been raised on direct appeal but were not are waived under the PCRA). Thus, for all of the aforementioned reasons, the dismissal of Jackson's PCRA petition must proper.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/19