Raesner *v.* Heinsius, Appellant.

Argued November 16, 1966.    Before BELL, C. J.,
MUSMANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused August 1, 1967.

*David C. Baldus,* with him *John A. Metz, Jr., Sig-mund Rosenwasser,* and *Metz, Cook, Hanna & Kelly,*
for appellant.

*James E. McLaughlin,* with him *John M. Tighe,* and *McArdle, Harrington, Feeney & McLaughlin,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 30, 1967:

This is an appeal from the decree of the lower court directing defendant, in his capacity as administrator of the estate of Nellie Heinsius, deceased, to pay over to plaintiff the sum of $40,100, which amount the court determined was held by the deceased as constructive trustee for plaintiff at the time of her death.

As found by the chancellor, the facts are as follows: Over some twenty years, plaintiff had acquired the practice of leaving large sums of money for safe keeping with decedent's husband who kept the money in a Pittsburgh bank in safe deposit box number G-392, which he held jointly with his wife. After the death of decedent's husband, the money entrusted to him was returned to plaintiff.

On February 6, 1958, decedent changed the designation of her individual safe deposit box number G-479 at the same bank to the joint names of plaintiff and herself. During that month real estate belonging to plaintiff was sold, and the proceeds were sent to plaintiff in the form of certified checks totalling $49,500. These checks were cashed by decedent, and the proceeds—$40,000 in one thousand dollar bills, $9,000 in one hundred dollar bills, and $500 in fifty dollar bills— were placed by decedent in the jointly held safe deposit box. The serial numbers of the forty one thousand dollar bills were recorded by the bank, in compliance with bank policy, at the time the bills were paid out to decedent. Between February 6, 1958 and May 25, 1959, decedent gained entrance to the box on eight occasions, upon three of which she also entered a safe deposit box at the same bank held in the names of herself and her son, the present defendant. Plaintiff en-

tered box G-479 on only two dates, September 14, 1959 and September 17, 1959. On September 14, 1959, plaintiff notified decedent that the money that had been placed in the safe deposit box number G-479 was missing. Decedent denied having any knowledge of the disappearance.

Decedent rented a third safe deposit box at another bank, where she also maintained checking and savings accounts. From June 3, 1957 until her death on March 12, 1963, she was the only person having access to that box. Following her death the box was found to contain $25,000 in one thousand dollar bills and $6,700 in one hundred dollar bills. Twenty-three of these one thousand dollar bills were negotiated by defendant on April 17, 1963 and were found to bear serial numbers identical with twenty-three of those recorded in February 1958. It was also established that eight one thousand dollar bills were received by the Federal Reserve Bank—three on December 19, 1959 and five on April 14, 1960—from the bank where decedent maintained her individual safe deposit box and her checking and savings accounts. The serial numbers on all eight bills matched those borne by eight of the bills paid over to decedent in February 1958.

Before she died, depositions of decedent were taken. In her depositions, she denied having taken the money and claimed that on one occasion she withdrew $9,400 from the safe deposit box number G-479 and handed it over to plaintiff so that he could satisfy a tax liability. The chancellor ruled that under the Dead Man's Act, Act of May 23, 1887, P. L. 158, §5(e), 28 P.S. §322, plaintiff was not competent to testify, and, therefore, her depositions are not contradicted.[1] It was, how-

---

[1] This ruling was correct inasmuch as decedent's depositions were offered in evidence by plaintiff rather than by defendant. In *Rosche v. McCoy*, 397 Pa. 615, 156 A. 2d 307 (1959), we held that when the party who represents the interest of a decedent

ever, directly proved by disinterested witnesses and evidence of banking policy that decedent had converted $31,000. Since there was no way to prove by direct evidence that the remainder of the missing money had been taken by decedent, the chancellor was satisfied that proof had been established circumstantially. Accordingly, he decreed that decedent's estate was liable to plaintiff in the sum of $40,100.

On appeal, decedent does not contest the award of $31,000 to plaintiff. Likewise, plaintiff does not contest the chancellor's ruling that the Dead Man's Act disqualified plaintiff from giving testimony that would contravert decedent's testimony that she had returned $9,400 to plaintiff. Defendant seeks merely to reduce the chancellor's award to $31,000, while plaintiff seeks to uphold the award of $40,100.

We are convinced that the chancellor's award was correct. Since it was conclusively and directly proved that decedent converted $31,000 of a larger fund entrusted to her for safekeeping, and since only decedent had access to the money until all of it was found missing, and since decedent lied about taking any of the money despite the incontrovertible proof that she had taken $31,000, we believe that it is fair to infer that she took the balance of the fund. Under the evidence, the only explanation for the difference in testimony as to who took the remaining $9,100 is that either decedent or plaintiff was not being truthful. Inasmuch as it has been shown that decedent lied about a portion of the fund, it is more reasonable to conclude that she lied about the rest than to discredit plaintiff's claim.

While there are no Pennsylvania cases directly on point, there is an Alabama case which holds that proof

offers decedent's deposition in evidence, he has waived the Dead Man's Act and the surviving adverse party becomes competent to testify. We expressly cautioned practitioners therein that if the depositions of defendant-decedent were offered by plaintiff, that would not make plaintiff competent to testify.

of the mere possession of bonds by defendant, which bonds had been contained in a recently stolen automobile, is sufficient to allow an inference that defendant stole both the bonds and the automobile. *Dickey v. State,* 32 Ala. App. 413, 26 So. 2d 532 (1946). Likewise, the chancellor could properly infer theft of the whole amount from proof of theft of the smaller amount.

Indeed, this Court has stated in a case involving proof of causation: "It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. . . . Therefore, when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the factfinder any other evidence and reasonable inferences therefrom which are inconsistent therewith." *Smith v. Bell Telephone Company of Pennsylvania,* 397 Pa. 134, 138-139, 153 A. 2d 477, 480 (1959). Accordingly, the award of the chancellor was quite properly based on the evidence adduced.

Decree affirmed at appellant's cost.

Mr. Justice JONES took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Unanimous and recent decisions of this Court have held that claims against a decedent's estate must be established by evidence that is "clear, direct, precise and convincing," *Petro v. Secary Estate,* 403 Pa. 540, 170 A. 2d 325 (1961); *Petruzzi Estate,* 410 Pa. 554, 190 A. 2d 314 (1963) (per curiam). The evidence relied upon by the Court to establish the $9,100 claim against

the decedent's estate does not fit that formulation; more importantly, the Court's opinion completely ignores a well established and sound precedent and, instead, permits recovery of the $9,100 solely on the basis of inferences from circumstantial evidence, citing as authority therefor a standard of proof enunciated in a negligence case. Needless to say, the standard of proof in negligence is irrelevant to the instant determination. The Alabama criminal case relied upon by the Court is also inapposite, as well as distinguishable. There is no reason why an Alabama decision in a different branch of the law should disturb a well established and sound rule of Pennsylvania law.

I therefore dissent and would reverse the decree insofar as it awards to the appellee the $9,100 not traceable by serial numbers to the defendant's decedent's estate or established by other evidence that is "clear, direct, precise and convincing."

Mr. Chief Justice Bell joins in this dissenting opinion.