Stanley CHASE

v.

Mary GROFF and the Fidelity Bank, Executors of the Estate of Dr. Robert A. Groff

and

The Trustees of the University of Pennsylvania.

Civ. A. No. 74–2205.

United States District Court, E. D. Pennsylvania.

April 8, 1976.

Lawrence Elliot Hirsch, Stuart Jeffrey Schatz, Philadelphia, Pa., for plaintiff.

William T. Campbell, Jr., Swartz, Campbell & Detweiler, Nancy M. Weinman, Philadelphia, Pa., for Estate of Dr. Groff.

John J. Dautrich, White & Williams, Philadelphia, Pa., for Trustees of Univ. of Pa.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

In this medical malpractice action which consumed 52 trial days, the jury, in answer to eight pages of special interrogatories, found that the plaintiff had failed to prove that the defendant's decedent, Dr. Robert A. Groff, was negligent in the preparation for surgery, in the performance of the surgery, and the aftercare of the plaintiff in connection with two prefrontal lobotomies performed on the plaintiff by Dr. Groff in 1967 and 1969. The jury also found that the plaintiff had not sustained his burden of proof in connection with his allegation that Dr. Groff had failed to obtain an informed consent before performing the two lobotomies. Plaintiff Stanley Chase has moved for a new trial and has alleged as the sole error the Court's ruling which limited the plaintiff's testimony pursuant to the Pennsylvania Dead Man's Act. After carefully considering this record and the arguments advanced by the plaintiff, the Court has determined that it must deny the motion for a new trial.

Plaintiff in this action alleged that Dr. Groff committed malpractice in connection with his preparation of the plaintiff for the 1967 and 1969 lobotomies; in his performance of the two lobotomies; and in his care of the plaintiff following the two surgical procedures. The plaintiff also alleged that Dr. Groff failed to obtain an informed consent in connection with both the 1967 and the 1969 prefrontal lobotomies. The Trustees of the University of Pennsylvania (HUP) were joined as defendants. Plaintiff alleged that HUP was negligent in that it permitted the lobotomies to be performed in the hospital and failed to properly supervise the care and treatment of the plaintiff in the hospital. The plaintiff also alleged that HUP failed to obtain an informed consent in connection with the two lobotomies.[1]

The plaintiff's complaint against Dr. Groff and HUP was filed on August 23, 1974. Dr. Groff was deposed by the plaintiff on January 9, 1975, and on March 10, 1975. Dr. Groff was suffering from terminal cancer and the deposition

1. The Court directed a verdict in favor of HUP upon its motion under Rule 50 of the Federal Rules of Civil Procedure at the completion of the plaintiff's case.

was videotaped at his request for possible use at trial. Dr. Groff died on April 25, 1975, before the defendants conducted any discovery. Counsel for all parties were present and participated at Dr. Groff's deposition.[2] On August 13, 1975, and September 10, 1975, HUP took the deposition of the plaintiff, Stanley Chase, Counsel for the Estate of Dr. Groff attended the deposition on both dates, stating that he was there only as an observer, that he would not participate in the deposition, and that he did not intend to waive the Dead Man's Rule since Dr. Groff was deceased. Counsel for the plaintiff objected to the presence of counsel for the Estate at the plaintiff's deposition and stated that the plaintiff considered the presence of counsel for the Estate to be a waiver of whatever claim the Estate might have to the protection of the Dead Man's Act.[3] Counsel for the Estate did not participate in the deposition of the plaintiff, nor did he propound any pretrial interrogatories to the plaintiff or conduct any other pretrial discovery of the plaintiff.

2. The videotaped deposition lasted eight hours, and although plaintiff's counsel did most of the questioning, all counsel directed some questions to Dr. Groff.

3. The following statements were made prior to and at the conclusion of each day of testimony at the deposition of Stanley Chase:

MR. CAMPBELL: I would like to state for the record that I am present at the deposition, but I will not participate in it in any way, my purpose being not to waive the dead man's rule, as Dr. Groff has died.

MR. HIRSCH: In response to Mr. Campbell's remarks, I would like to state that he is asserting a position regarding the dead man's statute which essentially is a device to avoid the testimony of the plaintiff. It is our position that the defendant, Dr. Robert A. Groff, has waived any rights under the dead man's statute by firstly the deposition that was taken and the participation in that deposition by counsel for Dr. Groff. In fact, that deposition was videotaped at the request of counsel for Dr. Groff, and that is noted on the record in that case.

I also would like to say that notices of deposition by letter were sent by Mr. Campbell, I believe, on two occasions, and this would also constitute a waiver of the dead man's statute.

It is our position that Mr. Campbell is invited to participate in this deposition, and if he prefers not to because of any type of technical or legal defense based upon the dead man's statute, he does so at his own risk.

MR. CAMPBELL: Dr. Groff is not alive to protect himself from this outrageous suit, and I am certainly standing on every possible defense. They are not devices; they are a defense. I don't believe there has been a waiver. I believe the deposition of Dr. Groff was taken by Mr. Hirsch, and certainly I had a right as counsel to ask questions to clarify certain matters at that deposition.

* * * * * *

MR. HIRSCH: I want to note for the record that throughout the deposition Mr. Campbell has been taking notes, which I wouldn't attempt to characterize other than by saying by peeking at his yellow pages I note he is up to page 13. I would ask that notice be taken of this and that Mr. Campbell's notes be preserved if any issue arises as to waiver of the dead man's statute.

MR. CAMPBELL: I will be glad to keep the notes.

* * * * * *

MR. BODELL: Let me state for the record that my name is Joseph Bodell. I am here for William Campbell, Jr. I am present at the deposition, but I will not participate in the deposition in any manner.

MR. HIRSCH: Let the record show that I object to the presence of counsel on the basis that was just stated. Mr. Campbell took the position at the first deposition which was held on August 13, 1975, that he was attending but not participating. That to me is a meaningless semantic distinction, and our position as to participation by Dr. Groff's counsel is already on the record, and we will maintain that position.

MR. BODELL: Mr. Campbell previously outlined our position in the prior deposition of Mr. Chase, and I will not repeat it here, but our position remains the same.

* * * * * *

MR. HIRSCH: I want to note for the record Mr. Bodell's continued presence at the deposition, the fact that he has been making extensive notes throughout the deposition. As I asked Mr. Campbell after the first deposition of Mr. Chase that the notes be preserved, and Mr. Campbell agreed to that, I assume you agree to do the same?

MR. BODELL: They will be preserved in any event. (Deposition of Stanley Chase at 4, 5, 6, 101, 106, 211).

The Pennsylvania Dead Man's Act, 28 P.S. § 322 provides in relevant part:

Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto and therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy . . . .[4]

The Dead Man's Act makes a survivor incompetent to testify against a decedent if: (1) the deceased had an actual right or interest in the matter at issue; (2) the right of the deceased passed to a party of record who represents his interest; and (3) the interest of the survivor is adverse to that of the deceased.[5] Plaintiff never contested at trial that these three elements were present in this case but argued only that the estate had waived its asserted protection under the Dead Man's Act. It is clear therefore that absent a waiver by the Estate of Dr. Groff, the plaintiff was incompetent to testify against the Estate as to any events occurring prior to Dr. Groff's death.

At trial, counsel for the plaintiff stated that he intended to call the plaintiff to testify against the Estate as to events occurring prior to Dr. Groff's death.

Counsel for the Estate argued that the plaintiff was incompetent under the Dead Man's Act. The Court asked all parties to submit memoranda of law in connection with the issue raised by the Dead Man's Act. After carefully considering the memoranda submitted by all parties,[6] the Court found no waiver by Dr. Groff or the Estate and ruled that Stanley Chase was incompetent to testify against the Estate of Dr. Groff as to anything occurring prior to Dr. Groff's death.[7] The Court stated:

I never ruled in connection with the Dead Man's Act and Mr. Hirsch has indicated that he is calling Stanley Chase and I would make it a finding that there has been no waiver by Dr. Groff's estate in connection with the Dead Man's Act, and I base this on my finding that Dr. Groff filed no interrogatories on the plaintiff and that Dr. —(when I say Dr. Groff, the Groff estate)—and the Groff estate did not depose the plaintiff and that they did not offer Dr. Groff's deposition into evidence; that that was offered by the plaintiff.

So as a result of that ruling, I want to make it clear that Stanley will become competent to testify if the Estate introduces witnesses as to transactions between the surviving party and the decedent or as to something occurring in the presence of the surviving party, and this will not make Stanley competent generally, but only in rebuttal. He may rebut that.[8]

Plaintiff contends that this ruling was error.[9]

---

**4.** The statute sets forth certain exceptions to the rule of incompetence, none of which is relevant to this case.

**5.** *See generally* Schulman, *Repeal the Dead Man's Evidence Act*, 35 Pa. B.A.Q. 183 (March 1964).

**6.** The plaintiff submitted the same memorandum in support of his motion for a new trial as he submitted at trial.

**7.** (N.T. 28–83). The Dead Man's Act has been construed to render the surviving party incompetent to testify concerning not only the precise transaction involved, but also to any

events occurring before the death of the decedent. *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957); *Weaver v. Welsh,* 325 Pa. 571, 191 A. 3 (1937); *Perlis v. Kuhns,* 202 Pa.Super. 80, 195 A.2d 156 (1963).

**8.** (N.T. 28–83). *See Volkwein v. Volkwein,* 146 Pa.Super. 265, 22 A.2d 81 (1941). There was no offer of rebuttal evidence by the plaintiff.

**9.** The plaintiff was permitted to, and did testify in connection with his claim against HUP. Counsel for HUP cross-examined the plaintiff at length in connection with this testimony but

Plaintiff first contends that the conduct of counsel for the Estate in connection with Dr. Groff's deposition constituted a waiver of the Dead Man's Act. Plaintiff points to the fact that counsel for Dr. Groff requested that the deposition of Dr. Groff be videotaped, that Dr. Groff bore the expense for that videotaping, that Dr. Groff was questioned by his counsel during his deposition, and that counsel for the Estate listed Dr. Groff's deposition as one of its exhibits in the Pretrial Order.

■■■ In *Raesner v. Heinsius,* 426 Pa. 166, 231 A.2d 144 (1967), the Supreme Court of Pennsylvania stated that where the deposition of the defendant's decedent (who was the original defendant in the lawsuit) was taken before she died in order to perpetuate her testimony for use at trial, and the deposition was offered into evidence by the plaintiff, there had been no waiver of the Dead Man's Act by the defendant, and the plaintiff was not competent to testify at trial. In a footnote, the Court explained this ruling as follows:

> This ruling was correct inasmuch as decedent's depositions were offered in evidence by plaintiff rather than by defendant. In *Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307, 81 A.L.R.2d 377 (1959), we held that when the party who represents the interest of a decedent offers decedent's deposition in evidence, he has waived the Dead Man's Act and the surviving adverse party becomes competent to testify. We expressly cautioned practitioners therein that if the depositions of defendant-decedent were offered by plaintiff,

that would not make plaintiff competent to testify. 426 Pa. at 168, n. 1, 231 A.2d at 146.[10]

It is therefore clear under the law of Pennsylvania that the fact that the plaintiff offers the decedent's deposition into evidence at trial does not act as a waiver by the defendant of the Dead Man's Act and make the plaintiff competent to testify. Nor does the fact that the decedent's deposition was taken for the purpose of perpetuating his testimony for use at trial constitute a waiver by the defendant of the Dead Man's Act. *Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307 (1959). We see no reason why the fact that the deposition was videotaped at the request of the decedent has any relevance to the plaintiff's argument that the estate has waived the protection of the Dead Man's Act.

■■■ Plaintiff also contends that because the Estate listed Dr. Groff's deposition as one of its exhibits in the Pretrial Order, the Estate waived the protection of the Dead Man's Act. Under this Court's Standing Order, a deposition not listed in the Pretrial Order cannot be introduced at trial. However, by listing a deposition in the Pretrial Order, a party is not bound to introduce it at trial. A deposition only becomes evidence when offered and accepted at trial. By listing the deposition of Dr. Groff in the Pretrial Order, the Estate did not offer it into evidence and thereby waive the Dead Man's Act.[11] Nor did the Estate "join" in offering the deposition of Dr. Groff into evidence at trial as the plaintiff contends. The Estate merely did not object to plaintiff's introduction of

---

was not permitted to question the plaintiff concerning any transaction between the plaintiff and Dr. Groff. Counsel for the Estate did not cross-examine the plaintiff.

**10.** In *Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307 (1959), the Supreme Court ruled that the trial court had erred in excluding the plaintiff's testimony after the defendant had offered the decedent's deposition, taken to perpetuate his testimony for trial, into evidence. The Court held that in offering the decedent's deposition the defendant had waived the benefit of the

Dead Man's Act. In reversing the lower court's ruling, the Court stated that:

> This does not preclude the plaintiff from offering the deposition of McCoy, or such parts of it as are admissible but that would not thereby make the oral testimony of the minor plaintiff admissible. 397 Pa. at 626, 156 A.2d at 313.

**11.** In the Pretrial Order the estate listed no objection to the plaintiff's listing of Dr. Groff's deposition, a position consistent with that which it took at trial.

Dr. Groff's deposition.[12]   Plaintiff does not point out, nor do we see, how this in any way acted as a waiver by the Estate of the protection of the Dead Man's Act.

Plaintiff also contends that the Estate waived the protection of the Dead Man's Act by attending the deposition of the plaintiff.   Plaintiff apparently takes the position that such attendance is the equivalent of conducting discovery of the plaintiff and constitutes a waiver of the Dead Man's Act.   In *Anderson v. Hughes,* 417 Pa. 87, 208 A.2d 789 (1965), the Pennsylvania Supreme Court held that where a party is required to answer pre-trial interrogatories, any objection based upon the Dead Man's rule to the competency of such party to testify at the trial is waived even though the answers to the interrogatories were not offered in evidence.[13] We agree with, and the Estate does not contest, the proposition that the taking of a pretrial deposition by the Estate would act as a waiver of the Dead Man's Act as to Stanley Chase.   The record shows, however, that the deposition of the plaintiff was taken by HUP, that although counsel for the Estate was present he consistently maintained that he was only present as an observer and took no part in the deposition itself. Furthermore, the Estate attempted no pretrial discovery of the plaintiff.   The Court has determined that the mere presence of counsel for the Estate at the plaintiff's deposition did not constitute a waiver of the Dead Man's Act.   The full transcript of the deposition was filed with the Court and became a public record, available to all for inspection. The Estate did not participate in the deposition and the information elicited from the plaintiff was presumably only that which was relevant to the claims against HUP.   The plaintiff elected to file suit against both Dr. Groff and HUP.   HUP was clearly entitled to take whatever discovery it deemed appropriate pursuant to the Federal Rules of Civil Procedure.   The taking of the deposition of the plaintiff by HUP was to be expected at the time the plaintiff chose to join HUP as a defendant and the natural consequence of HUP's taking the plaintiff's deposition was to make its contents available to all parties.[14]

Plaintiff points to other instances which he claims waived the Dead Man's Act.   These likewise lack merit. First, plaintiff alleges that the Estate "scheduled and cancelled the deposition of plaintiff before and after Dr. Groff's death." [15]   There is no evidence in this record concerning such scheduling of the plaintiff's deposition.   Even if the plaintiff's deposition were scheduled by the Estate, such scheduling would not constitute a waiver by the Estate of the Dead Man's Act where, as in this case, the plaintiff's deposition was never taken by the Estate.   Plaintiff also argues that counsel for the Estate and HUP had a "substantial identity of interests." [16] Plaintiff does not, however, point out why this alleged identity of interests of the defendants should constitute a waiver.   The plaintiff elected to join both

---

12.  At trial, the following occurred in connection with the plaintiff's offer of Dr. Groff's deposition:

>   MR. HIRSCH: Your Honor, in the matter of calling the first witness, as a matter of formality, the plaintiff offered into evidence the entire Groff deposition as shown in videotape.
>   MR. CAMPBELL (counsel for Estate): That's agree [sic], Your Honor.
>   THE COURT: Yes, it has been received. [N.T. 2–3].

13.  *See also Perlis v. Kuhns,* 202 Pa.Super. 80, 195 A.2d 156 (1963); *Treharne v. Callahan,* D.C., 288 F.Supp. 131 (1968).

14.  Plaintiff could have chosen to bring suit only against Dr. Groff and under those circumstances the Estate would have been precluded from taking the plaintiff's deposition had it wished to preserve its protection under the Dead Man's Act.   Once HUP was joined as a defendant, the Estate could not control the discovery HUP would take, nor could it control the manner in which the discovery was conducted.   Indeed, the Estate had no control over any of the questions asked or information sought by HUP from the plaintiff at his deposition.

15.  Brief of plaintiff at 5.

16.  *Id.*

defendants. He apparently contends that by virtue of the fact that he sued both HUP and Dr. Groff, the Dead Man's Act was waived by HUP deposing the plaintiff. The plaintiff offered no case to sustain this contention and it is rejected. The plaintiff was not precluded from testifying against HUP.[17]

■ The plaintiff also contends that because Dr. Groff and HUP were both insured by the same carrier that discovery by HUP should be deemed discovery by the Estate. As to this contention, the plaintiff likewise failed to call our attention to any authority, and the Court rejects this argument. In this case the Estate and HUP had separate counsel and, in addition, the Estate was represented by counsel which it retained to protect the Estate's interest in connection with the plaintiff's claim for punitive damages. Their interest may have been adverse depending upon the evidence presented at trial. Plaintiff also argues that counsel for HUP presented interrogatories to the plaintiff at a time when he represented both HUP and Dr. Groff. Again, there is no evidence in the record that counsel for HUP represented Dr. Groff at any time during these proceedings or that interrogatories were ever propounded to the plaintiff by any counsel representing Dr. Groff. Finally, plaintiff alleges that "Dr. Groff's counsel, without authorization, obtained information about plaintiff from Dr. Ransohoff and Dr. Shoemaker."[18] Not only does plaintiff's allegation lack substantiation in the record, but we fail to see, and plaintiff has not explained, how this allegation bears any relationship to the waiver issue.

In this diversity action all parties agreed that Pennsylvania law should be applied. Accordingly, the competency of witnesses to testify at trial is controlled by the law of Pennsylvania.[19] There is

---

17. The Court at the plaintiff's request, without objection from defense counsel, on the thirty-second day of trial, instructed the jury as follows:

In Pennsylvania there is a statute that is known as the Dead Man's Act or the Dead Man's Statute and this statute has application in a case like the one that is now on trial, where suit is brought against a person, where, after suit was brought, he died before the trial, and the decedent's estate is substituted as a party to the suit.

Now under this act, the Dead Man's Statute, the surviving party to the cause of action is not permitted to testify against the decedent's estate as to any matter which occurred prior to the death of the decedent; so in this case Stanley Chase is the surviving party to the cause of action between himself and Dr. Groff, who, as you know, died before this actual trial began and whose interest in this lawsuit has passed to the executors of his estate.

Therefore, Stanley Chase, by virtue of the Dead Man's Act, is not permitted to testify against Dr. Groff's estate as to any matter occurring before the death of Dr. Groff.

However, this Dead Man's Statute, the Dead Man's Act, does not preclude Stanley Chase from testifying against the Hospital of the University of Pennsylvania who, as you know, or I should probably say "which," as you know, is also a party to the suit, a party defendant.

Now Stanley Chase may testify as to events or facts occurring before the death of Dr. Groff only when that testimony has relevance to the issues between Stanley Chase and the Hospital of the University of Pennsylvania.

So, therefore, I must instruct you that the testimony of Stanley Chase which relates to events or facts occurring before the death of Dr. Groff is to be considered by you as evidence only in the case wherein Stanley Chase has sued the Hospital of the University of Pennsylvania and not against the estate of Dr. Groff.

N.T. 32–18, to 32–19. *See Sollinger v. Himchak,* 402 Pa. 232, 166 A.2d 531 (1961); *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957).

18. Brief for plaintiff at 5.

19. Rule 601 of the Rules of Evidence for United States Courts and Magistrates provides:

Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

The Report of the House Committee which was adopted by the Conference Committee specifically provides:

Rule 601 as submitted to the Congress provided that "Every person is competent to

much merit to the often voiced criticism of the Dead Man's Act,[20] and it has been under attack in Pennsylvania for many years. It nevertheless remains the law in Pennsylvania and the question of whether there was a waiver in this case has been resolved by the Supreme Court of Pennsylvania. This Court is therefore without the power "to alter that which the state courts and legislature have refused to change." *Daye v. Commonwealth of Pennsylvania,* 483 F.2d 294, 299 (3d Cir. 1973).

Accordingly, the following Order is entered:

## ORDER

AND NOW, this 8th day of April 1976, upon consideration of the plaintiff's motion for a new trial, it is hereby ORDERED that the motion is DENIED.

be a witness except as otherwise provided in these rules." One effect of the Rule as proposed would have been to abolish age, mental capacity, and other grounds recognized in some State jurisdictions as making a person incompetent as a witness. The greatest controversy centered around the Rule's rendering inapplicable in the federal courts the so-called Dead Man's Statutes which exist in some States. Acknowledging that there is substantial disagreement as to the merit of Dead Man's Statutes, the Committee nevertheless believed that where such statutes have been enacted they represent State policy which should not be overturned in the absence of a compelling federal interest. The Committee therefore amended the Rule to make competency in civil actions determinable in accordance with State law with respect to elements of claims or defenses as to which State law supplies the rule of decision.

20. *See generally* Shulman, *Repeal the Dead Man's Act,* 35 Pa.B.A.Q. 183 (March 1964).