Carl ELLIS

v.

**CITY OF PITTSBURGH, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 10, 1997.
Decided Dec. 12, 1997.

Craig M. Barkley, Pittsburgh, for appellant.

Anita A. Scaglione, Pittsburgh, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

COLINS, President Judge.

The City of Pittsburgh (City) appeals an order of the Court of Common Pleas of Allegheny County (trial court) denying its motion for post-trial relief.[1] We affirm.

On August 17, 1988, Carl Ellis (Ellis) sustained serious injuries as a result of a fall on a set of steps on City property. Ellis filed a writ of summons on August 7, 1990, and thereafter a complaint on September 11, 1990, seeking damages for these injuries. A hearing was held before a Board of Arbitrators, which found in favor of the City. Ellis filed an appeal to the trial court, which after a non-jury trial, awarded him damages in the amount of $47,717.25, including delay damages. The City then filed a motion for post-trial relief, and on August 8, 1996, the trial court denied this motion and entered judgment in favor of Ellis. This appeal followed.

When reviewing a trial court's denial of a motion for post-trial relief, our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Pikur Enterprises, Inc. v. Department of Transportation,* 163 Pa.Cmwlth. 251, 641 A.2d 11 (1994). Additionally, we must review the record in a light most favorable to the verdict winner, who is afforded the benefit of all reasonable inferences that arise from the evidence. *United States Fidelity & Guaranty Co. v.*

---

1. See Pa. R.C.P. No. 227.1(a) (combining motion for new trial and, *inter alia,* motion for judgment notwithstanding verdict in one all encompassing motion for post-trial relief).

*Royer Garden Center and Greenhouse, Inc.,* 143 Pa.Cmwlth. 31, 598 A.2d 583 (1991), *petition for allowance of appeal denied,* 530 Pa. 663, 609 A.2d 170 (1992) (citing *Sacco v. City of Scranton,* 115 Pa.Cmwlth. 512, 540 A.2d 1370 (1988), *petition for allowance of appeal denied,* 524 Pa. 601, 568 A.2d 1251 (1989)).

■ The City's motion for post-trial relief asserts that Ellis failed to present any evidence of notice by the City of the dangerous condition of the steps. On appeal, the sole issue is whether the trial court committed reversible error in finding that the City had timely actual or constructive notice of the dangerous condition of the steps based on the testimony and evidence presented at the non-jury trial. We believe the trial court's denial of post-trial relief was proper because the trial court, acting as fact finder, was presented with substantial evidence enabling it to draw the reasonable inference that the City had actual or constructive notice of the defective step.

Under the operative law, commonly referred to as the "sidewalk exception" of the Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8542(b)(7), a political subdivision (such as the City) may be subject to liability where there is a dangerous condition of sidewalks. However, in order to recover the plaintiff must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury sustained, and that the political subdivision had actual or constructive notice of the condition at a time sufficiently prior to the accident to have taken measures to prevent the injury.[2]

The evidence presented in the instant case permits the fact finder to draw the reason-able inference that the City had actual or constructive notice of the hazardous condition of the steps at a time sufficiently prior to Ellis' fall to have taken measures to prevent the injuries sustained. The trial court found that the steps in question had been repaired on January 13, 1987, and that no other repairs were made to the steps until two months after Ellis' accident. *Ellis v. City of Pittsburgh,* 32 Pa. D. & C.4th 170, 171 (C.P. Allegheny County 1996). Moreover, when the steps were repaired, it was necessary to replace eight missing railings and two completely missing steps, and to repair five other steps. *Id.* The court found that this evidenced a progressive deterioration of the steps over a nineteen-month period from the last repairs to Ellis' accident. *Id.* at 171–172.

In addition, the testimony of the City's assistant director of public works highlighted that various City employees would clean or shovel these specific steps on four or five occasions a year. (Notes of Testimony (N.T.), p. 48.) These employees were charged with the maintenance of City steps and were under an obligation to report any defects of the steps they discovered during their cleaning or shoveling. (N.T., pp. 48–49.) This testimony, in conjunction with the testimony and evidence concerning the progressive deterioration of the steps, led the trial court to draw the reasonable inference that the City had actual or constructive notice of the dangerous condition of the steps at a point well before Ellis' accident.[3]

It is within the purview of the fact finder to draw all reasonable inferences from the evidence presented at trial. *Raesner v. Heinsius,* 426 Pa. 166, 170, 231 A.2d 144, 147 (1967).[4] In the present case, the trial court,

---

2. The pertinent provision of the statute reads:
   [T]he claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which occurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.
   42 Pa.C.S. § 8542(b)(7).

3. Judge Ross found that:
   [t]he City can reasonably be charged with notice of the missing rail and step in the case at

hand since it sent cleaning and reporting crews to the location at regular intervals. The condition of the missing step with the retaining rod projecting into space tells the court that this condition was one of more than short duration regardless of how long the rails were missing. Other steps were partially missing in October, telling the Court that degeneration was progressive.
*Ellis,* 32 Pa. D. & C.4th at 174.

4. [W]hen a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail, must be adequate to

in its capacity as fact finder, drew a reasonable inference from the evidence presented that it was more likely then not that the City had actual or constructive notice of the dangerous condition at a time well before Ellis' accident. At the foundation of this inference was the evidence that the steps in question were in an extreme state of disrepair, the testimony that these steps were examined on four to five occasions a year, and undoubtedly, the trial court's own life experience that steps of this nature do not degrade as rapidly as argued by the City. Since this inference is supported by substantial evidence, the conclusion of the trial court was neither an abuse of discretion nor an error of law.

Accordingly, we affirm the trial court's denial of the City's post-trial motion.

### ORDER

AND NOW, this 12th day of December, 1997, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

DOYLE, J., dissents.

DOYLE, Judge, dissenting.

I respectfully dissent as Carl Ellis (Ellis) has failed to present any evidence that the City had actual or constructive notice of a dangerous condition of the step at issue.

Ellis was injured on August 17, 1988, while descending one of the 545 City-owned staircases at 2:00 a.m. (Reproduced Record (R.R.) at 63a, 93a.) The staircase consists of a series of concrete steps and landings and is one of two staircases running downhill from Yale Street to Irwin Avenue. (R.R. at 36a, 89a.)

Ellis stated that there were approximately "a hundred something" steps in the staircase and "[a]bout four or five landings...."

(R.R. at 35a–36a.) Ellis testified that he had "made it to the second landing." (R.R. at 36a.) He then proceeded to go down the steps and "took about maybe four steps [and] as I went to take another step, it was not there." (R.R. at 26a.) Ellis stated that although a couple inches of the step were there (R.R. at 40a), the middle part of the step was missing. (R.R. at 41a.) When Ellis fell, he injured his back on the back of the step, his left leg was lacerated by a rod from the defective step and his left hand was lacerated by a bottle he had been holding when he fell. (R.R. at 26a, 53a–54a, 71a.)

In accordance with what is commonly referred to as the "sidewalk exception" of the Political Subdivision Tort Claims Act (Act), 42 Pa.C.S. § 8542(b)(7), a political subdivision may be subject to liability where there is a dangerous condition of the sidewalk. In order to recover, a claimant

*must establish* that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with *notice under the circumstances* of the dangerous condition *at a sufficient time prior to the event* to have taken measures to protect against the dangerous condition....

*Id.* (emphasis added). A municipal corporation is not liable for injuries resulting from a defective sidewalk, therefore, unless actual or constructive notice of the defect is established. *Murray v. Siegal,* 413 Pa. 23, 26, 195 A.2d 790, 792 (1963). To establish constructive notice, it is necessary to show that the defect existed for such a period of time that it could have been discovered and corrected through the exercise of reasonable care. *Id.*

Although the non-jury verdict in favor of Ellis requires us to review the facts in the record and construe all reasonable inferences

---

establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the factfinder [sic] any other evidence and reasonable inferences therefrom which are consistent therewith.
(citation omitted). *See generally* 1A Wigmore, Evidence '30–36 (Tillers Rev.1983) (discussing Wigmore's understanding of inference which "stresses that the assessment of inference and probability as to matters of fact inescapably in-

volves the consideration of the relative legitimacy and plausibility of competing hypotheses and generalized statements"); Hart & McNaughton, Evidence and Inference in the Law, pp. 44–45 (1958) (examining the role of inference in fact-finding, and stating the trier of fact simply asks itself which of the contesting contradictory propositions according to the trier's limited experience more nearly squares with the evidence").

in favor of the verdict winner, inferences must still be derived from facts in evidence. (Majority opinion at 594.) In this case, none of the evidence presented addressed any deterioration of the step area ("the step") where Ellis fell. The only evidence in the record regarding this step is that immediately after the accident, Ellis saw that only about two inches remained of the step and that a metal rod protruded from that remnant. There was no evidence that the remaining concrete was fresh or deteriorating, e.g., spalling, flaking, or crumbling. Further, there was no evidence that the metal rod was deteriorated in any way, such as in a rusted, eroded or corroded condition from which a similar inference could be drawn regarding constructive notice.

The trial court concluded that the City had constructive notice for three reasons:

1. The City regularly sent cleaning and reporting crews to the location at regular intervals; and

2. The condition of the missing step with the retaining rod projecting into space creates an inference that this condition was one of more than a short duration; and

3. Other steps were found to be partially missing two and a half months after Ellis' accident creating an inference that degeneration was progressive.

(Majority opinion p. 594, n. 3.) The missing element necessary for constructive notice here, however, is that: regardless of how many numerous, reasonable and proper inspections were or were not made, there are not facts in evidence that at the time of Ellis' accident the area in the vicinity of the step was in a deteriorated condition so that an inference can be drawn from that evidence that this step was deteriorating for a sufficient period of time prior to the event to permit the City to repair it. Otherwise the City would be liable for even a freshly broken step by vandals or other conditions beyond its control merely because at some unproven time prior to a fall, city employees worked in the area and months later some of the other steps and railings were replaced.

The description is inadequate and insufficient to infer constructive notice without some proof from which to infer deterioration in the vicinity of the step prior to Ellis' accident, as opposed to deterioration in other areas of the over 100 steps.

First, the trial court inferred constructive notice of the missing step from the fact that the City sent cleaning and reporting crews to the location at intervals. The trial court referred to the testimony of a City employee that maintenance of City steps are given "a priority and the steps are 'inspected and looked at' . . . four or five times a year when bushes are removed from the steps in the growing season and when snow is removed in the winter." (Trial court opinion at 2.)

As to inspection of the steps, a City employee testified that:

> THE WITNESS: The steps are inspected and looked at probably about four or five times a year between the summer program with the cleaning of the bushes from the steps, and also, in the winter program when we clean the snow off the steps. So they are visited and looked at, but not as you say inspected, but they are looked at.

(R.R. at 59a.) [1] There was, however, no specific evidence as to when the City employees ever looked at the steps. The last documented visit to the steps prior to Ellis' fall occurred nineteen months earlier, on January 13, 1987, when the City replaced one missing tread. (R.R. at 110a.) That repair, of one step, in fact creates an inference that the steps were not in a general state of disrepair or that the step in question was missing at that time because when fixing one step, all of the other steps are then checked in order to do all the repairs at one time. (R.R. at 112a.) Additionally, the City had no record of any complaints about any of the steps between the repair on January 13, 1987, and Ellis' injury on August 17, 1988. During that intervening nineteen-month period, even if City employees were on the steps for any reason, the trial court found no facts concerning the condition of the step at the time of the accident except the existence of

---

1. Actually, without any evidence of deterioration in the step area, the irresistible inference from this witness' testimony is that this must have been a fresh break because any degree of deterioration causing a step to rot through would have been noticed and reported.

"space," a two-inch concrete remnant and a metal rod, neither of which latter two is described to be in a deteriorating condition from which an inference of long-lasting deterioration can be drawn.

Second, the majority erroneously relies upon the trial court's conclusion that "the condition of the missing step with the retaining rod projecting into space" creates an inference of constructive notice of a deteriorated condition. There are no tangible facts of record surrounding the space to support such a conclusion. "Space," per se, is the absence of matter from which no inference of deterioration can be drawn. What really matters is the condition of the matter in the space, *i.e.*, the two-inch concrete remnant and the metal reinforcing rod. The record is so devoid of a description of their condition at the time Ellis fell that an inference of the deterioration of either is as unwarranted and unsupported as an inference of their nondeteriorated condition would be.

In *Chidester v. City of Pittsburgh*, 354 Pa. 417, 47 A.2d 130 (1946), it was held that there was actual notice of a missing tread on city steps which caused Chidester's injuries. Several witnesses testified that the step was missing for two or three months. In addition to such actual notice, it was held that there was constructive notice because "not only at the *immediate place* where plaintiff's foot went through the opening, but *all around that place*, the supports of the steps, the stringers, the handrail and its supports, all were in such a *rotted* and *decayed* condition, that defendant for months had constructive notice of this dangerous situation." *Id.* at 419–420, 47 A.2d at 132 (emphasis added).

*Chidester* recognizes that constructive notice may be inferred from evidence of facts showing a general state of disrepair from deterioration existing at the time of the accident provided there is other evidence of deterioration "not only in the immediate place where plaintiff's foot went through, but all around that place." Thus, in order to prove constructive notice, facts about the defective area must be proven showing decay, deterioration and otherwise rotted conditions in existence at the time of the accident which support an inference that the deteriorated

condition existed for a sufficient time prior to the accident that the City should have known it and could have repaired it if a reasonable inspection were made. There are no facts in this case of any deterioration of the immediate place where Ellis' foot went through the step or of the surrounding area, including the repairs made three months later except a two-inch remnant of a step which is unknown to be fresh or deteriorated, a protruding rod which is of unknown condition and "space."

As a matter of law, a reasonable inference cannot be drawn for Ellis that the City had constructive notice merely because the step was missing except for about two inches from which a metal rod protruded. There must be facts in the record describing the condition of the remaining portion of step and rod in order to draw the proper inference. The trial court erred, therefore, in concluding: "The condition of the missing step with the retaining rod projecting into space tells the court that this condition was one of more than short duration...." (Trial court opinion at 5.) However, constructive notice of deterioration may come only from the physical features remaining at the scene of the accident, *i.e.*, rotted, spalling, flaking, crumbling, decayed, deteriorated, rusty, corroded, eroded, etc.

Ellis presented no evidence as to the age of the step in question, its appearance at any time prior to the accident, any prior deterioration of the step, how long the step was missing, or how long the defective condition of the step would have been observable prior to his accident. There was no evidence to infer that the City had any notice of any type of observable defect other than the other step that was replaced over a year ago. There was no evidence to dispel the possibility that the step was missing a day, or even an hour before this accident.

Ellis had the burden of proving notice of the defect in question. "Whenever the condition of a particular place or thing at a certain time is in question, evidence of its condition at a prior or subsequent time is inadmissible, unless there is accompanying proof that it had not been changed in the meantime." *Murray*, 413 Pa. at 23, 195 A.2d at 793 (citations omitted). The burden of construc-

tive notice is not, therefore, carried by evidence that a step was missing and repairs were made two and a half months afterward, because there is no proof that any deterioration had not changed and did not occur after Ellis fell.

In *Murray,* the plaintiff was walking along an unimproved sidewalk when the earth suddenly collapsed beneath her, causing her to fall into a hole and to suffer injuries. Adjacent to the hole was a storm sewer catch basin which was flush with the sidewalk. The City maintained the sidewalk, storm sewer and basin. Although there was no record of any inspection since the sewer was built in 1929, there was evidence that a depression occurred on the same sidewalk several years before, several feet from the point of the accident. The City later filled that depression. The plaintiff charged the City with failure to reasonably inspect a sewer catch basin and keep it in good repair. The Supreme Court held in a unanimous opinion in the *Murray* case that although there was expert opinion evidence that water during storms carried off earth particles and eroded the soil to form a depression in which water collected in a pool which weakened *the area,* there was no evidence that *the catch basin in question* was in a state of disrepair, nor was it established that the weakened condition or void had existed previously for such a period of time that those with responsibility for its maintenance could be charged with notice thereof.

Likewise, when the physical condition of the defect at the time of the accident is unknown, repairs made two and one-half months afterwards do not create an inference of deterioration before the accident without proof that the physical condition two and one-half months later existed without change since the time of the accident. *Id.*

The majority opinion is based upon an assumption that the staircase as a whole was in disrepair at the time of Ellis' accident. However, merely because the City replaced one step out of approximately one hundred steps eighteen months before Ellis' fall and thereafter made repairs and replaced two more after Ellis' accident, it does not follow that the City was on notice that the step at issue was in any kind of a state of disrepair for a sufficient time prior to this event, to qualify as constructive notice.

In order to establish constructive notice, it was necessary for Ellis to prove that the physical condition of the step and/or the surrounding area was in such a state of deterioration at the time of the accident that an inference can be drawn that it was previously deteriorated *for such a period of time that it could have been discovered by the City and corrected* through the exercise of reasonable care before Ellis' accident.

Therefore, as there was insufficient evidence to establish that the City had actual or constructive notice, I would reverse the order of the trial court.

KELLEY, J., joins in this dissenting opinion.