IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Steven Welch    :
    :
From a Decision of:    :
Philadelphia Board of Pensions and    :    No. 273 C.D. 2022
Retirement    :    Submitted:  February 3, 2023
    :
Appeal of:  Steven Welch    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT    FILED:  April 18, 2023

Steven Welch (Welch) has appealed an order of the Court of Common Pleas of Philadelphia County (trial court) that denied his claim for service-connected disability retirement benefits.  In doing so, the trial court affirmed an adjudication of the Philadelphia Board of Pensions and Retirement (Pension Board) that Welch did not qualify for benefits because his rotator cuff injury did not permanently disable him from doing his job as an accounting systems specialist.  We affirm.

**Background**

Welch worked as an accounting systems specialist for the City of Philadelphia's Department of Streets (Streets Department or Department).  "The Streets Department is the primary response agency for the City in winter weather events such as snow and ice storms.  As such, it is essential the Department maintain an adequate workforce in such emergencies."  Reproduced Record at 38a (R.R. __).  On February 12, 2014, Welch volunteered to work snow emergency duty and injured

his right arm while entering a snow removal vehicle. Subsequently, on October 7, 2014, he had surgery to repair his rotator cuff.

On December 2, 2015, Welch applied to the Pension Board for service-connected disability retirement benefits, asserting that his shoulder injury disabled him from performing his job. On August 25, 2016, the Pension Board denied Welch's application. Welch appealed the denial, and the Pension Board convened a panel to conduct a hearing on his appeal.

At the December 13, 2017, hearing, Welch testified about his injury. He explained that he continued to experience pain after his October 2014 surgery even though his treating physicians had cleared his return to work as of April 2015. Welch added that after that, he still had "some pain and [] limited mobility," and that if he did "anything repetitive, [his] arm would be in pain." Notes of Testimony (N.T.), 12/13/2017, at 12; R.R. 438a.

Welch presented reports from Joseph Guagliardo, D.O., and Brent Weinerman, D.O. Noting that Welch's job responsibilities required him to assist in snow removal, Dr. Guagliardo concluded that Welch's "disability is solely related to his work injury[.]" R.R. 412a. In an October 25, 2016, follow-up letter to Welch's attorney, Dr. Guagliardo noted that Welch's job with the Department required him to use a keyboard and an adding machine and to do inventory, which required lifting and moving various materials. R.R. 413a. Dr. Guagliardo opined that Welch was unable to perform "that type of work." *Id*. Dr. Weinerman concurred with Dr. Guagliardo's opinion that Welch was disabled from performing his accountant job duties and that his disability was "due solely to [his] work injury" caused while doing snow removal duties for the Streets Department. R.R. 418a.

2

The City of Philadelphia's medical director, Marilyn Howarth, M.D., offered a different opinion. She concluded that Welch's rotator cuff had been "successfully repaired" by surgery and that he had recovered almost full function. R.R. 144a. She opined that he could perform his accounting position with the Streets Department.

Based on Welch's testimony and the record before it, the hearing panel unanimously recommended denial of Welch's application for benefits. Its recommendation was adopted by the full Pension Board. In an adjudication of November 15, 2018, the Pension Board denied Welch's application for benefits for the stated reason that he was able to perform the duties of an accounting systems specialist, notwithstanding his shoulder injury.

In reaching this determination, the Pension Board did not credit Dr. Guagliardo because he based his opinion, in significant part, on the understanding that Welch was required to participate in snow removal duties as part of his job. Likewise, in adopting Dr. Guagliardo's opinion, Dr. Weinerman had used this same unfounded presumption. Further, Dr. Guagliardo did not explain why Welch's injury would keep him from performing his accounting-related duties.[1] Neither Dr. Guagliardo nor Dr. Weinerman explained how Welch's rotator cuff, which was found by Welch's treating physicians to be healed, impinged on Welch's ability to serve in his position as an accounting systems specialist. Finally, the Pension Board found that Welch's treating doctors had generally concluded he had made significant improvement and could return to work.

---

[1] Dr. Guagliardo's October 25, 2016, letter stated that Welch could not do "that type of work" without specifying whether it was lifting boxes or doing data entry that was the problem. R.R. 413a.

3

The Pension Board concluded that Welch did not satisfy the requirements of the City of Philadelphia Public Employees Retirement Code (Retirement Code) that the injury be "due solely to the performance of the duties" of his position and that he was "totally incapacitated from the further performance of [his] duties." PHILA. PUB. EMPLOYEES RET. CODE §22-401(1)(a).[2] Simply, the injury did not prevent Welch from performing the duties of an accounting systems specialist. The Pension Board denied Welch's application for service-connected disability retirement benefits, and Welch appealed to the trial court.

The trial court remanded the matter to the Pension Board to determine the scope of Welch's job responsibilities at the time of his injury. The Pension Board convened a remand hearing panel to consider that question and to make a recommendation to the Pension Board.

At the remand hearing, Welch testified that his regular job with the Streets Department required him to lift boxes of binders that could weigh as much as 20 pounds. In addition, he testified to performing approximately six hours of data

---

[2] It states, in pertinent part, as follows:

(1) *Qualification.* Any member found by the Board to be permanently incapacitated from further performance of duty, which incapacity resulted solely from the performance of the duties of the member's position and was not caused by the member's own wrongful conduct, shall be retired and shall receive service-connected disability retirement benefits. To approve an application for such benefits, the Board must find that:

(a) the member is mentally or physically totally incapacitated from the further performance of the duties of the member's position;

(b) such disability is likely to be permanent;

(c) such disability existed while the member was still in the employ of the City[.]

PHILA. PUB. EMPLOYEES RET. CODE §22-401(1)(a)-(c) (emphasis in original).

4

entry each day. Welch acknowledged that he did not request an accommodation to be excused from either lifting boxes or from snow removal.

The Deputy Commissioner for the Streets Department, Christopher Newman, testified that an injured employee is not required to participate in snow removal and that this exception had been made for other employees with physical limitations. Newman testified that Welch was assigned to residential snow operations as a "navigator" and that participants in these operations were volunteers. N.T., 2/4/2021, at 30; R.R. 74a. He testified, specifically, that "[a]dministrative employees are not required to work snow operations. They typically do only if they volunteer to work in that capacity." N.T., 2/4/2021, at 28; R.R. 72a. Employees who volunteer either earn "overtime" or "hour for hour cash during those extra hours [they] are working." N.T., 2/4/2021, at 29; R.R. 73a. He added that "most people that work snow make more money by virtue of doing so." *Id*. Newman denied that lifting heavy boxes was part of Welch's job description, but in any case, any employee who could not lift a box would be excused from doing so. Newman agreed, however, that data entry was a required part of Welch's job and that an accounting systems specialist "does [] a lot of data entry." N.T., 2/4/2021, at 26; R.R. 70a. Specifically, the job entails "sitting at a keyboard entering information from invoices and other documents into . . . a computer system program[.]" *Id*.

On November 12, 2021, the Pension Board issued a supplemental adjudication with additional findings of fact. The Pension Board found that Welch was not required to participate in snow removal or to lift heavy boxes in order to do his job as an accounting systems specialist. It also found that Welch never asked to be excused from snow removal or for an accommodation with respect to lifting boxes. It credited Newman's testimony that snow removal was not an essential part

of Welch's duties as an accounting systems specialist and that Welch would have been granted an accommodation excusing him from lifting heavy boxes had it been necessary. Finally, it found that Welch resigned from his position in June 2015.

Based on these findings of fact, the Pension Board again concluded that Welch's injury did not satisfy the requirements of the Retirement Code. PHILA. PUB. EMPLOYEES RET. CODE §22-401. Regardless of whether snow removal was a required job duty, Welch failed to meet his burden of proving that he was permanently incapacitated from performing the duties of an accounting systems specialist. The Pension Board stood by its previous findings and conclusions regarding the medical evidence in the case.

In a letter dated April 29, 2021, the Pension Board notified Welch that, upon remand, it had confirmed its previous denial of his application for service-connected disability during its regularly scheduled meeting of February 25, 2021. Subsequently, Welch again appealed to the trial court, and on February 21, 2022, the trial court affirmed the decision of the Pension Board.

On June 15, 2022, the trial court issued a PA.R.A.P. 1925(a) opinion. Therein, the trial court explained that "Welch did not provide any evidence, beyond his own subjective belief, that he was compelled to continue volunteering for the snow emergency program as [] part of his job duties, or why he felt he could not stop doing it after his injury." Trial Court 1925(a) Op. at 6; R.R. 489a. Further, "none of the physicians involved in the case opined on Mr. Welch's ability to perform data entry." Trial Court 1925(a) Op. at 8; R.R. 491a. "The only testimony regarding Mr. Welch's alleged inability to perform data entry came from Mr. Welch himself." *Id.* The trial court concluded that the Pension Board's finding that Mr. Welch was able

6

to perform his job duties was supported by substantial evidence and affirmed the Pension Board's adjudication.

Welch appealed to this Court.[3]

**Appeal**

On appeal, Welch raises two issues. First, he argues that the Pension Board erred by finding that his injuries did not result from the performance of the duties of his position with the Streets Department. Second, he argues that the Pension Board erred in finding he was not totally incapacitated from performing his pre-injury job.

The Pension Board rejoins that Welch's first argument is beside the point because the Streets Department did not contest the fact that his shoulder injury occurred in the course of his City employment. In any case, substantial evidence supports the Board's finding that Welch's injury, which occurred while volunteering for snow removal, did not preclude him from performing his job duties as an accounting systems specialist for the Streets Department.

**Analysis**

Section 22-401 of the Retirement Code governs this appeal. It states in relevant part, as follows:

> (1)  *Qualification.* Any member found by the Board to be permanently incapacitated from further performance of duty, which *incapacity resulted solely from the performance of the duties of the member's position* and was not caused by the member's own wrongful conduct, shall be retired and shall receive service-connected disability retirement benefits. To

---

[3] This Court's review determines whether constitutional rights were violated, whether an error of law was committed, and whether findings of fact are supported by substantial evidence of record. *Tepper v. City of Philadelphia Board of Pensions and Retirement*, 163 A.3d 475, 481 n.8 (Pa. Cmwlth. 2017) (citation omitted).

approve an application for such benefits, the Board must find that:
> (a)      the member is mentally or physically totally incapacitated from the further performance of the duties of the member's position;
> (b)      *such disability is likely to be permanent*;
> (c)      such disability existed while the member was still in the employ of the City[.]

PHILA. PUB. EMPLOYEES RET. CODE §22-401(1)(a)-(c) (emphasis added). In sum, to qualify for benefits, the member must be "totally incapacitated from the further performance of the duties of the member's position." *Id*. at §22-401(1)(a).

In his first issue, Welch contends that the Pension Board erred by finding that he was not injured while performing the duties of his position with the Streets Department. Welch explains that he was asked to join the snow emergency team in July 2007, while he was still on probationary status with the Department and "he did not believe he had the prerogative to decline [the] request." Welch Brief at 22. He further asserts that on February 12, 2014, the date of his injury, "he was 'instructed' to report to the snow yard at 1:00 a.m." *Id*. The Department's Snow and Ice Operations Plan for 2013-14 states that "any employees assigned to Streets Department Operations during a weather event are deemed essential and must report to work unless otherwise instructed[.]" Welch Brief at 24 (quoting definition of "Essential Staff" in the Streets Department Winter 2013-2014 Snow and Ice Operations Plan). *See also* R.R. 38a. Because Welch was acting within the scope of his employment and was on the employer's premises when injured, his incapacity resulted from "the performance of the duties" of his position. PHILA. PUB. EMPLOYEES RET. CODE §22-401(1)(a).

The Streets Department does not question the fact that Welch was injured while doing snow removal. However, snow removal is not a required part

8

of Welch's regular duties as an accounting systems specialist. The Pension Board credited the testimony of the Department's witness, Newman, that Welch is not, and will not, be required to participate in snow removal duties and that, otherwise, Welch's regular duties as an accounting systems specialist are those of a typical sedentary, office worker position. We reject Welch's first assignment of error.

In his second issue, Welch argues that the Pension Board erred by concluding he did not qualify for benefits because he was not incapacitated from performing his pre-injury job as an accounting systems specialist. *See* PHILA. PUB. EMPLOYEES RETIREMENT CODE §22-401(1)(a) (to grant benefits, the Board must find the member "physically totally incapacitated"). Welch argues that the Pension Board's finding that he is able to perform the repetitive motions required for data entry is not supported by substantial evidence. The Pension Board's finding in this regard "mischaracterized the reports of Drs. Weinerman and Guagliardo and discredited them in favor of treating physicians who misunderstood [] Welch's job duties and failed to consider whether he could spend six hours a day at a keyboard entering data into a computer." Welch Brief at 32-33. Welch criticizes the Pension Board for relying on the opinion of Dr. Howarth, who is the City's medical director. She did not examine him, but, rather, relied upon the report of Francis Burke, M.D., who released Welch to work on April 2, 2015. However, Welch continued to have ongoing problems, as evidenced by his visit to John Crawford, D.O., on April 13, 2015, at which Welch complained that "he did not 'feel fully healed.'" *Id*. at 33 (citing R.R. 252a). Finally, Welch disputes the Pension Board's assumption that the Streets Department "accommodated [his] lifting/carrying restrictions[.]" Welch Brief at 35. To the contrary, Welch testified that "no such accommodation was

9

made" and that he "was required to retrieve heavy documents and storage boxes." *Id*. at 39.

In response, the Streets Department explains that the Pension Board considered Welch's testimony but, instead, credited Newman's testimony that had Welch requested an accommodation, it would have been granted. However, Welch never did so. Further, the Pension Board is entitled to deference in regard to its credibility determinations. The Pension Board rejected the reports of Drs. Weinerman and Guagliardo because they assumed Welch was required to participate in snow removal, and neither expert explained why Welch could not type or do data entry. Indeed, "none of the physicians involved in the case wrote anything about data entry." Streets Department Brief at 18. On the issue of moving boxes, the Pension Board found nothing in Welch's job description required lifting of heavy boxes. Because the Pension Board's factual findings are supported by substantial evidence, the Streets Department argues that the trial court properly affirmed the Pension Board's adjudication. We agree.

It is the Pension Board's role to resolve evidentiary conflicts and make all necessary credibility determinations; it is not the court's job to re-weigh the evidence. *Dale v. Philadelphia Board of Pensions and Retirement*, 702 A.2d 1160, 1164 (Pa. Cmwlth. 1997). In its role as factfinder, the Pension Board is entitled to draw all reasonable inferences from the evidence presented to it. *Ellis v. City of Pittsburgh*, 703 A.2d 593, 594 (Pa. Cmwlth 1997). Here, the Pension Board reviewed the medical evidence presented by the parties and concluded that this evidence supported a finding that Welch was able to perform his accounting-related duties.

10

Welch's regular job duties primarily involved "sitting at a keyboard entering information from invoices and other documents," *i.e.*, a relatively sedentary activity. N.T., 2/4/2021, at 26; R.R. 70a. A City Encounter form, dated January 15, 2015, states that Welch was subject to limits on repetitive motion for his Right "Upper Extremity" but that he was able to perform 6-8 hours per day of "fine manipulation," "fingering," and "simple grasp." R.R. 210a. A February 6, 2015, patient visit charting note by Dr. Burke states that Dr. Lazarus, Welch's surgeon, had placed "no work restrictions" on Welch. R.R. 213a. Dr. Burke found Welch was able to perform 97% of his work duties; was advised by Welch that he could "perform his computer work activities" albeit he was "upset about returning to work;" and had pain in his neck and back unrelated to the work incident. R.R. 213a-14a. These notes, in addition to the reports of Drs. Howarth, Guagliardo, and Weinerman, support the Pension Board's factual finding that Welch was not permanently incapacitated from performing his job as an accounting systems specialist with the Streets Department. Accordingly, the Pension Board properly concluded that Welch did not satisfy the requirements of the Retirement Code.

Because the Pension Board's findings of fact are supported by substantial evidence and those findings support the legal conclusion that Welch did not qualify for a service-related pension, the trial court properly affirmed the decision of the Pension Board to deny Welch's application for disability retirement benefits. Accordingly, we affirm the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Steven Welch      :
     :
From a Decision of:      :
Philadelphia Board of Pensions and      :      No. 273 C.D. 2022
Retirement      :
     :
Appeal of: Steven Welch      :

# **O R D E R**

AND NOW, this 18th day of April, 2023, the February 22, 2022, order of the Court of Common Pleas of Philadelphia County, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita